J-S37024-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| RITA E. FORBES | |
| Appellant | No. 1822 MDA 2016 |

Appeal from the Judgment of Sentence August 24, 2016
In the Court of Common Pleas of York County
Criminal Division at No(s): CP-67-CR-0008132-2015

BEFORE: STABILE, J., MOULTON, J., and MUSMANNO, J.

MEMORANDUM BY MOULTON, J.:               **FILED NOVEMBER 15, 2017**

Rita E. Forbes appeals from the August 24, 2016 judgment of sentence entered in the York County Court of Common Pleas following her bench-trial convictions for driving under the influence ("DUI") of a controlled substance – general impairment and careless driving.[1]  We affirm.

The opinion of the Honorable Harry M. Ness set forth a detailed factual and procedural history, which we adopt and incorporate herein.  **See** Opinion in Support of Order Pursuant to Pa.R.A.P. 1925(a), 1/6/17, at 1-13 ("1925(a) Op.").  On November 3, 2016, Forbes timely appealed to this Court.

---

[1] 75 Pa.C.S. § 3802(d)(2) and 3714(a), respectively.

Forbes raises one issue on appeal: "The trial court erred in admitting the lack of convergence (LOC) test as it is a variation of the horizontal gaze nystagmus (HGN) test, which is not admissible, as both tests are used to gauge the eye's ability to track an object in order to determine the possibility of intoxication."[2] Forbes' Br. at 4.

_____

[2] The Commonwealth argues that Forbes waived this challenge on appeal because she did not file a pre-trial motion *in limine* challenging the LOC evidence under the standard in ***Frye v. United States***, 293 F. 1013 (D.C. App. 1923) or request a ***Frye*** hearing. While it is true that Forbes did not file such a motion or request, Forbes objected to admission of the LOC test both pre-trial and when Officer O'Brien testified about the test, arguing that the LOC test was inadmissible because of its similarity to the HGN test. When Forbes objected, the trial court found, without considering expert testimony, that the LOC and HGN tests were not similar and, without further argument, allowed Officer O'Brien to lay a foundation for the LOC test. N.T., 8/24/16, at 4-7, 38-39. While Forbes could have lodged a more specific objection to the LOC evidence, under these circumstances we conclude that Forbes has preserved her challenge pursuant to Pennsylvania Rule of Appellate Procedure 302.

We further note that the Pennsylvania Supreme Court recently amended the comment to Pennsylvania Rule of Criminal Procedure 578, which addresses omnibus pre-trial motions, to state that, effective January 1, 2018, motions *in limine* "proposing or opposing the admissibility of scientific or expert evidence" should be addressed in an omnibus pretrial motion. ***In re: Order Revising the Comment to Rule 578 of the Pennsylvania Rules of Criminal Procedure***, No. 494 Criminal Procedural Rules Docket (Pa. filed Sep. 21, 2017). The comment notes that "[g]iven the potential complexity when the admissibility of such evidence is challenged, such challenges should be raised in advance of trial as part of the omnibus pretrial motion if possible." ***Id.*** However, the comment also notes that "nothing in this rule precludes such challenges from being raised in a motion *in limine* when circumstances necessitate it." ***Id.***

Forbes argues that the trial court erred in admitting the results of the LOC test as substantive evidence. We apply the following standard of review in such matters:

> [T]he admissibility of evidence is a matter addressed to the sound discretion of the trial court and . . . an appellate court may only reverse upon a showing that the trial court abused its discretion. An abuse of discretion is not a mere error in judgment but, rather, involves bias, ill will, partiality, prejudice, manifest unreasonableness, or misapplication of law.

*Commonwealth v. Cox*, 115 A.3d 333, 336 (Pa. Super.) (internal quotations omitted), *app. denied*, 124 A.3d 308 (Pa. 2015). Further, if

> it is determined that the trial court erred in admitting the evidence, the inquiry becomes whether the appellate court is convinced beyond a reasonable doubt that such error was harmless. Harmless error exists where: (1) the error did not prejudice the defendant or the prejudice was *de minimis*; (2) the erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence; or (3) the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict.

*Commonwealth v. Robinson*, 721 A.2d 344, 350 (Pa. 1998) (internal citations omitted).

Forbes asserts that the trial court incorrectly determined that the LOC test is different from the HGN test. Forbes notes that this Court has determined that the HGN test is novel scientific evidence, the admissibility of which depends on expert testimony pursuant to *Commonwealth v. Topa*, 369 A.2d 1277 (Pa. 1977), which adopted the standard announced in *Frye*

*v. United States*, 293 F. 1013 (D.C. App. 1923). According to Forbes, the LOC and HGN tests are similar and, as a result, the trial court should have required the Commonwealth to present evidence that the LOC test has gained general acceptance in the scientific community. However, we need not reach this question.

Even if Forbes were correct that the trial court improperly admitted this evidence, we conclude any error was harmless because the uncontradicted evidence of guilt was overwhelming.

Section 3802(d)(2) of the Vehicle Code provides:

> **(d) Controlled substances.--**An individual may not drive, operate or be in actual physical control of the movement of a vehicle under any of the following circumstances:
>
> . . .
>
> (2) The individual is under the influence of a drug or combination of drugs to a degree which impairs the individual's ability to safely drive, operate or be in actual physical control of the movement of the vehicle.

75 Pa.C.S. § 3802(d)(2). A person may be convicted under this subsection where the Commonwealth proves that person "was under the influence of a drug to a degree that impairs [the person's] ability to safely drive[] or operate a vehicle." *Commonwealth v. Williamson*, 962 A.2d 1200, 1204 (Pa.Super. 2008). "Section 3802(d)(2) does *not* require that any amount or specific quantity of the drug be proven in order to successfully prosecute under that section." *Id.* (emphasis in original).

Here, the record shows that Forbes swerved into a lane of oncoming traffic, forcing another vehicle off the road to avoid a collision. When Officer O'Brien made contact with Forbes, she was swaying, nodding off, and speaking so softly that she could barely be heard. In addition, when Officer O'Brien re-approached and tried to return Forbes' license and paperwork to her, Forbes failed in her effort to grab the documents. Forbes also admitted to Officer O'Brien that she had taken numerous narcotics, including fentanyl, Dilaudid, gabapentin, and Zoloft. Further, Forbes failed two other field sobriety tests and when she attempted to perform the LOC test, Officer O'Brien terminated the test because he feared that Forbes would fall and injure herself. While Forbes has well-documented medical issues and presented an expert witness who concluded that Forbes could safely drive because she should have built up a tolerance to these medications, the Commonwealth's evidence overwhelmingly showed that Forbes was under the influence of a combination of drugs to a degree that impaired her ability to safely drive an automobile. Given this overwhelming evidence, any error in the trial court's consideration of a possibly inadmissible sobriety test was harmless.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 11/15/2017

# IN THE COURT OF COMMON PLEAS OF YORK COUNTY, PENNSYLVANIA
## CRIMINAL DIVISION

|                              |   |                           |
|------------------------------|---|---------------------------|
| COMMONWEALTH OF              | : | NO. CP-67-CR-8132-2015    |
| PENNSYLVANIA                 | : |                           |
|                              | : |                           |
| v.                           | : |                           |
|                              | : |                           |
| RITA FORBES,                 | : |                           |
| Appellant/Defendant          | : |                           |

## OPINION IN SUPPORT OF ORDER PURSUANT TO Pa.R.A.P. 1925(a)

Appellant, Rita Forbes, by and through her attorney, Anthony J. Tambourino, Esquire, appeals to the Superior Court of Pennsylvania. On November 15, 2016, and pursuant to Pa. R.A.P. 1925(b), this Court directed Appellant to file a Concise Statement of Matters Complained of on Appeal. On December 5, 2016, the Appellant filed the statement. This Court now issues this 1925(a) Opinion.

## PROCEDURAL HISTORY

Appellant was found guilty in a non-jury trial that occurred on August 24, 2016 of the following: DUI: Controlled Substance – Impaired Ability – 1st

1

Offense and Careless Driving. The Appellant filed a Post-Sentence Motion on September 2, 2016, which was denied on October 6, 2016.

## MATTERS COMPLAINED OF ON APPEAL

The Appellant states and raises the following grounds for error on appeal:

1. Whether the trial court erred in denying Appellant's request for a Frye Hearing on the scientific reliability of the lack of convergence (LOC) test as used by police officers to determine whether a motorist may be driving under the influence?

2. Whether the trial court erred in admitting lack of convergence test (LOC) test as it is a variation of the horizontal gaze nystagmus (HGN) test, which is not admissible, as both tests are used to gauge the eye's ability to track an object in order to determine the possibility of intoxication?

3. Whether the Commonwealth . . . present[ed] sufficient evidence of Appellant's intoxication give that the uncontradicted [sic] testimony from the Appellant's expert was that Appellant could not have been impaired based on her prescription medication and no other evidence provided sufficient proof of impairment beyond a reasonable doubt?

4. Whether the great weight of the evidence warrants a new trial given that the evidence of intoxication was . . . weak and that it failed to rebut Appellant's expert testimony that she was not impaired based on her prescription medication and other medical issues?

5. Whether the trial court erred in denying the Appellant's request

2

to enter the ARIDE manual into evidence given that it was a self-authenticating document pursuant to Pa.R.E. 902?[1]

## BACKGROUND

This Court will now discuss a brief summary of the relevant factual background information that will be referenced in the following "Discussion" section of this opinion.

Immediately prior to trial, Counsel for the Defense made an oral motion in limine to exclude testimony about the lack of convergence test and the results of this test.[2] After argument from the Commonwealth, this Court noted that there was a distinction between the HGN test and LOC test, but would make the determination when and/or if the Commonwealth brought up the results of the lack of convergence ("LOC") test during trial.[3]

Then, the Commonwealth called Bradley Grove to testify. Grove testified that on July 31, 2015 at around 9:20 p.m., he was driving north toward the Wilson Avenue and Ridge Avenue Intersection.[4] The Defendant, who was the

---

[1] Beside the term "whether" and the question marks, these matters are quoted from Appellant's Statement of Errors Complained Pursuant to Pa.R.A.P. 1925(b) (filed December 5, 2016).
[2] N.T., Non-Jury Trial, August 24, 2016, pg. 4.
[3] *Id.* at 6.
[4] *Id.* at 8-9.

3

driver of the vehicle ahead of Grove, started to turn left at the intersection, but then made a U-Turn in the middle of the street and headed back in the direction toward Grove.[5] The Defendant's car moved all the way over to Grove's side of the road and headed straight toward Grove.[6] To avoid the Defendant's car, Grove had to jump the curb along the right side, through the grass, and then off the curb and back onto the road.[7] Appellant had turned right, out of Grove's lane after she was in Grove's lane.[8] The Defendant's car had stopped as well, and the Appellant was the driver of the car.[9] Grove indicated that there was nothing in the roadway that would cause Appellant to drive in the wrong lane toward Grove's car.[10]

Officer Joseph O'Brien was dispatched to the scene of this accident. Officer O'Brien has training in DUI investigations, including initial training at the academy and standardized field sobriety training and ARIDE training, which is based on DUIs where "there's an interaction of alcohol and drugs or

---

[5] Id. at 9, 19.
[6] Id. at 13-14.
[7] Id. at 9.
[8] Id. at 19-20.
[9] Id. at 9, 17.
[10] Id. at 14.

4

combination of drugs.[11] Officer O'Brien testified that there are multiple things that are looked for in a DUI, including "any evidence that they are impaired by their alcohol or drug or a combination of drugs and not anything else, whether that be lack of sleep, being tired, exhaustion, physical impairments, or any other mental issues."[12] Specifically, he looks for "balance issues, coordination, speech, any signs from the body, anything that going to dictate why they are being impaired or why they are behaving a certain way."[13] Someone's driving is also taken into account.[14]

In regard to Appellant's behavior, Officer O'Brien testified that she was speaking softly and slowly to the point that it was hard for him to hear her, and her speech was a little slurred.[15] "[S]he couldn't stay still. She was swaying back and forth, side to side, kind of in circles. She just couldn't keep her balance as far as standing still."[16] As Officer O'Brien would talk to her, her voice would become quieter and trail off.[17] As her voice was trailing off, "her

---

[11] *Id.* at 23.
[12] *Id.* at 24.
[13] *Id.* at 24-25.
[14] *Id.* at 25.
[15] *Id.* at 28.
[16] *Id.*
[17] *Id.*

head would go down, and her eyes would shut."[18] According to Officer O'Brien, this type of behavior is called "on the nod," and it is commonly seen when a person is taking opiates.[19] In regard to the swaying, Officer O'Brien said that there was a greater amount of swaying than what was normal for other DUIs that he had investigated previously.[20] In fact, Appellant was swaying two to four inches in any one direction, to the point that Officer O'Brien was concerned that she would fall.[21]

Appellant had told Officer O'Brien about medical issues that she had, but Officer O'Brien did not think that her behavior was a direct result of the medical issue or physical impairment, based on his training and "experience in dealing with other people that are under the influence of medications and drugs."[22] When Officer O'Brien handed back her license, registration and insurance, she reached to grab the papers, but she completely missed them when she tried to grab them at first.[23]

---

[18] *Id.* at 28-29.
[19] *Id.* at 29.
[20] *Id.*
[21] *Id.*
[22] *Id.* at 30.
[23] *Id.* at 30-31.

Officer O'Brien also observed Appellant acting slowly, and smacking and licking her lips like she had dry mouth.[24] Officer O'Brien stated that a lot of controlled substances and medications cause this.[25] Appellant told Officer O'Brien that she was taking the following: 100 microgram of Fentanyl (a dermal patch that is a three-day extended release), which she took two days prior; 4 milligram Dilaudid, 800 milligram Gabapentin, and Zoloft.[26]

Then, Officer O'Brien conducted field sobriety tests with the Appellant because there were "multiple indications that she was under the influence of the drugs and that they were playing a part in the bad driving that [he] had heard about from [Grove] . . . . [A]s well as the behavior that [he] was seeing, it was falling in line with what [he] would expect out of some of those medications, especially the Fentanyl."[27]

Officer O'Brien conducted four field sobriety tests, including: the Rhomberg balance test, the finger-to-nose test and the lack of convergence test,

---

[24] *Id.* at 31.
[25] *Id.*
[26] *Id.* at 32.
[27] *Id.* at 33-34.

which focus on drug impairment, although they can show alcohol impairment.[28]

Appellant failed the Rhomberg test, which is when the person is

> instructed to pay attention to the instructions, and at that point in time, they are asked to on command place their head back, close their eyes with their hands by their sides, and estimate the passage of 30 seconds [without counting out loud]. Once they believe 30 seconds have passed, put their head forward, open their eyes and saw the word done."[29]

During the Rhomberg test, Appellant was swaying, counting out loud, and, after 20 seconds, Appellant opened her eyes.[30] An acceptable response time is between 25 and 35 seconds for that part of the test.[31]

Appellant also failed the finger-to-nose test which is when the person is instructed to "stand with their arms out to their sides and close their eyes" and the officer tells the person to start with either their left or right hand.[32] The person then touches their nose with the corresponding hand's finger and then put it immediately back out to the side, and then the other hand's finger touches their nose and immediately puts it back out.[33] This process is then done a few

---

[28] *Id.* at 34, 35.
[29] *Id.* at 35-36.
[30] *Id.* at 37.
[31] *Id.* at 57.
[32] *Id.* at 37.
[33] *Id.*

8

times.[34] During this test, Appellant did not follow the directions because she would keep her hand on her nose rather than immediately putting her hand back out.[35]

As Officer O'Brien began to discuss the lack of convergence test, Counsel for the Appellant objected saying that "it's essentially similar to the HGN. It's an eye test, so I'm arguing that it's essentially a continuation of the HGN test, which is inadmissible."[36] This Court asked if counsel or the Defendant had any case law and noted that HGN is different from the LOC test and that it "is more than just nystagmus that's being tested."[37]Counsel for the Defendant did not have any case law, and this Court noted that he has not "seen anything that suggests that the lack of convergence test requires a degree of expertise that [Officer O'Brien] doesn't have." [38] Though, this Court instructed the Commonwealth to lay a foundation for Officer O'Brien's training and experience with the LOC test.[39]

---

[34] *Id.* at 37.
[35] *Id.* at 37-38.
[36] *Id.* at 38.
[37] *Id.* at 38-39.
[38] *Id.* at 39.
[39] *Id.* at 39-40.

Officer O'Brien testified that the LOC test (and the Rhomberg test) was a part of Officer O'Brien's training at the ARIDE school.[40] Officer O'Brien explained that the LOC test is for a certain drug that is being looked for, and that the LOC test is "where you have a subject follow a stimulus, specifically [Officer O'Brien] use[s] the tip of [his] pen, and . . . instruct[s] the [person] to follow the stimulus at all times until [Officer O'Brien] tell[s] them the test is done."[41] Specifically, the lack of convergent test is drug specific for marijuana.[42] The purpose of this test is to have the person's eyes track the stimulus, and when the officer brings the pen close to the person's face, the officer is observing whether the person's eyes converge or cross.[43] At first, Officer O'Brien was not able to complete the LOC test because Appellant "was unable to follow the stimulus. [Officer O'Brien would] move the pen, and [Appellant would] follow it a second, and she'd just lose focus."[44]

Officer O'Brien concluded that Appellant "was under the influence of some sort of controlled substance or a multitude of different drugs, so she was

---

[40] *Id.* at 40.
[41] *Id.* at 40-41.
[42] *Id.* at 62.
[43] *Id.* at 41.
[44] *Id.*

placed under arrest for driving under the influence." This conclusion was based

on

> everything that [he] observed, the report of the driving that she had, [his] interactions with her, her speech, her mannerisms, her behavior, her lack of balance, her lack of ability to perform simple tasks as far as following a stimulus, following instructions on tests, she just wasn't able to put that all together. [He] felt that it was more than a physical injury for sure.[45]

Officer O'Brien noted that he knew Appellant had balance issues due to medical issues, but he clarified that "even when [he] just had her standing still in one spot, not asking her to move, not asking her to manipulate anything, she would just sway back and forth, side to side, in a circle. She wasn't able to keep that position steady at all in any situation."[46] Lastly, Officer O'Brien noted that he would not have been at all comfortable in letting Appellant get back into her car to drive that night.[47]

The defense brought Dr. Lawrence Guzzardi to testify, who was stipulated to be an expert in the field of medical toxicology.[48] Dr. Guzzardi is a medical toxicologist who testified that if the Appellant was consistently taking

---

[45] *Id.* at 42.
[46] *Id.* at 43.
[47] *Id.*
[48] *Id.* at 68.

11

her medication as prescribed (Fentanyl, Dilaudid, Gabapentin and Zoloft.), she would have had built up a tolerance to the negative side effects of the drugs, such that she would be able to drive without impairment at the time of the incident in question. [49] Dr. Guzzardi's conclusions assumed that Appellant "actually took those substances at the levels that she indicated" to [the] officer," as well as medical records if they had specific notations.[50] According to Dr. Guzzardi, if Appellant had gotten the "prescriptions, and didn't take them, diverted them for some way and suddenly started taking them on the day of the accident. . . she would have been under the influence."[51] Also, if she had consumed much more of the Dilaudid and Fentanyl patch, than what she told Officer O'Brien, she could also have experienced negative effects.[52]

Dr. Guzzardi admitted that when he had observed and talked to Appellant on the day of the trial, she did not have problems paying attention to Dr. Guzzardi or problems communicating, although she was soft-spoken.[53] Dr.

---

[49] *Id.* at 69-85.
[50] *Id.* at 95.
[51] *Id.* at 96-97.
[52] *Id.* at 97.
[53] *Id.* at 99.

Guzzardi also testified that the medications that Appellant was taking can be abused by patients, but Gabapentin abuse was unlikely.[54]

Fentanyl is a narcotic, with negative potential side effects of sedation, an inability to follow commands and sleepiness.[55] Dilaudid is also a narcotic and its negative side effects, like Fentanyl, include, in the initial phases, euphoria or dysphoria, and sedation.[56] Gabapentin can also cause sedation in high quantities,[57] and Zoloft can also cause sedation when it is initially taken.[58]

The Commonwealth then called Officer O'Brien to testify again and Officer O'Brien testified that Appellant was more attentive on the day of trial, clearer, not trailing off with her sentences and that she was not "on the nod."[59]

During the post-sentence motion hearing, in addition to other arguments, counsel for the Defense wanted the ARIDE manual entered into evidence, which was not done during trial.[60] This Court questioned how the ARIDE manual would get into evidence now and that the manual does not necessarily

---

[54] *Id.* at 99.
[55] *Id.* at 69.
[56] *Id.* at 76.
[57] *Id.* at 78.
[58] *Id.* at 83.
[59] *Id.* at 103.
[60] Transcript of Post Sentence Motion hearing at 2, *Commonwealth v. Forbes* (October 6, 2016).

13

prove the Defense Counsel's point that the LOC test is just like the HGN test.[61]

Though, this Court was willing to admit the ARIDE manual into evidence if the Commonwealth agreed to it, which the Commonwealth did not.[62] The Commonwealth pointed out that Officer O'Brien could certainly testify about how someone's pupils react to light or whether or not they cross, and that, even if they were found to be the same, the introduction of the evidence would've been harmless error since it was "similar enough to other evidence that was presented, that it wouldn't have been prejudicial to the Defendant."[63] This Court again requested case law that the LOC test was not accepted by the scientific community or that it was identical to the HGN test and that it should have a scientific expert testify, which Defense Counsel admitted that there were not any cases specific to the LOC test.[64]

The Commonwealth pointed out that the LOC test was in a different part of the ARIDE manual compared to the HGN test.[65] This Court also pointed out that the Court should not just look at the manual (which came in with the post-

---

[61] *Id.* at 5.
[62] *Id.*
[63] *Id.* at 6.
[64] *Id.*
[65] *Id.* at 7.

sentence motion) , and that it was an incorrect action to enter the manual into evidence by just handing the manual to the Court the manual and telling the Court to read it.[66]

The Court also pointed out that he "was fairly under whelmed by the cumulative weight of Dr. Guzzardi's opinion and took into consideration all of the facts that we heard, her behavior, her driving, her inability to perform even simple tasks."[67]

Further, Defense Counsel did not get the trial attorney's stipulation for the ARIDE manual to come in at the post-sentence motion hearing, and the Commonwealth would not stipulate to this at the hearing, so the Court decided not to admit the manual. [68]

## DISCUSSION

This Court will now address Appellant's grounds for the appeal, in order.

1. *In response to Appellant's first ground for the Appeal, the Appellant never requested a Frye Hearing, and, so the issue is waived.*

Under the Frye test, "novel scientific evidence is admissible if the methodology that underlies the evidence has general acceptance in the relevant

---

[66] *Id.*
[67] *Id.* at 9.
[68] *Id.* at 11.

15

scientific community."[69] In *Commonwealth v. Einhorn*, the Appellant claimed that certain testimony wasn't admissible under Frye. However, the Appellant in that case "never filed a motion in limine seeking to preclude . . . [Dr. Guzzardi's] testimony on the basis of *Frye,* nor did he request a *Frye* hearing."[70] Further, during the trial in that case, the Appellant "attempted to impeach [Dr. Guzzardi] through cross-examination in which trial counsel questioned the acceptability of [Dr. Guzzardi's] utilized method; however, at no time did Einhorn seek to preclude the testimony based on a *Frye* assessment prior to this appeal."[71] The court concluded that this ground for the appeal was waived because of the general rule, which is that "issues not raised in the lower court are waived and cannot be raised for the first time on appeal."[72]

Based on a review of the record, here, Counsel for the Defense did not even mention Frye until the Defense's Post-Sentence Motion. At no point in trial did Defense counsel present testimony from medical experts about the LOC's test general acceptance in the scientific community. As indicated in the

---

[69] *Commonwealth v. Einhorn*, 911 A.2d 960, 974-975 (Pa. Super. Ct. 2006).
[70] *Id.* at 975.
[71] *Id.*
[72] *Id. (Citing* Pa.R.A.P., Rule 302(a); the Court concluded that "Thus, because of Einhorn's failure to preserve this claim in the trial court, the issue is waived.")

16

Background section of this opinion, Counsel for the Defense's only materials offered to support its conclusions about the LOC test's general acceptance in the scientific community was an ARIDE manual, in which the LOC test was in a separate section from the HGN test. Had Counsel for the Defense requested a Frye hearing prior to trial, this Court may have entertained it. However, this issue was waived because the Defense counsel never timely requested a Frye hearing, and, so, this Court respectfully requests that the Superior Court find this ground for the appeal meritless.

2. ***In response to Appellant's second ground for the appeal, this Court did not err when it admitted the lack of convergence test.***

The standard on the admissibility of evidence is as follows:

> '[T]he admissibility of evidence is a matter addressed to the sound discretion of the trial court and ... an appellate court may only reverse upon a showing that the trial court abused its discretion.' 'An abuse of discretion is not a mere error in judgment but, rather, involves bias, ill will, partiality, prejudice, manifest unreasonableness, or misapplication of law.[73]

Here, as indicated in the Background section of this opinion, Appellant's counsel had not provided any case law that supported that the lack of the

---

[73] *Commonwealth v. Cox*, 115 A.3d 333, 336, *appeal denied,* 124 A.3d 308 (Pa. 2015) (internal citations omitted).

17

convergence test was the same as the HGN test, or that it was unacceptable in the scientific community. In fact, as indicated above, Counsel for the Appellant admitted that there was no case law that said it was the same.

During the HGN test,

> the driver is asked to cover one eye and focus the other on an object (usually a pen) held by the officer at the driver's eye level. As the officer moves the object gradually out of the driver's field of vision toward his ear, he watches the driver's eyeball to detect involuntary jerking. The test is repeated with the other eye. By observing (1) the inability of each eye to track movement smoothly, (2) pronounced nystagmus at maximum deviation and (3) onset of the nystagmus at an angle less than 45 degrees in relation to the center point, the officer can estimate whether the driver's blood alcohol content (BAC) exceeds the legal limit of .10 percent.[74]

HGN test results are scientific evidence "based on the scientific principle that alcohol consumption causes nystagmus. . . . Therefore, an adequate foundation must be presented prior to admission of HGN test results."[75] For the admission of the HGN test, the standard is as follows: "Pennsylvania law requires that an adequate foundation be set forth establishing that HGN testing

---

[74] *Commonwealth v. Stringer*, 451 Pa. Super. 180, 183, 678 A.2d 1200, 1201–02 (1996).
[75] *Id.*

is generally accepted in the scientific community, including the medical science field of ophthalmology." [76]

The LOC test, as described by Officer O'Brien in his testimony which is found in the Background section of this opinion, is distinctive from the HGN test and no testimony was put into the record stating that it was the same as the HGN test or that it was not accepted by the scientific community, and Appellant had not requested a Frye hearing to show that it was not accepted by the scientific community. Unlike the HGN test, no case law establishes that the LOC test results are deemed to be scientific evidence.

Further, there is no evidence that the admission of the LOC test involved bias, ill will, partiality, prejudice, manifest unreasonableness or a misapplication of law. Had the LOC test not been admitted, there was still sufficient evidence to find that Appellant was intoxicated and would not have changed the outcome of the case. As such, this Court respectfully requests that the Superior Court find that this Court did not abuse its discretion to admit the LOC test and find this ground for the appeal meritless.

---

[76] *Id.*

19

**3. In response to Appellant's third ground for the appeal, the Commonwealth presented sufficient evidence of Appellant's intoxication to find Appellant guilty of DUI: Controlled Substance – Impaired Ability – 1st Offense beyond a reasonable doubt.**

Appellant contests that the evidence of Appellant's intoxication was insufficient to find Appellant guilty of DUI. We find that there was sufficient evidence. The standard used to analyze a sufficiency of the evidence claim is as follows:

> Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Where the evidence offered to support the verdict is in contradiction to the physical facts, in contravention to human experience and the laws of nature, then the evidence is insufficient as a matter of law. When reviewing a sufficiency claim the court is required to view the evidence in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence.[77]

In proving its case, the Commonwealth may rely solely on circumstantial evidence.[78] The Commonwealth "need not preclude every possibility of

---

[77] *Commonwealth v. Widmer*, 744 A.2d 745, 751 (Pa. 2000)(internal citations omitted).
[78] *Commonwealth v. Brown*, 48 A.3d 426, 430 (Pa. Super. Ct. 2012)(citing *Commonwealth v. Markman*, 916 A.2d 586, 598 (2007)).

20

innocence."[79] If there is doubt about a Defendant's guilt, the doubt "may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances."[80] As the fact-finder in a non-jury trial, the judge, "while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence."[81]

According to the Pennsylvania statute, DUI: Controlled Substance – Impaired Ability – 1st Offense is defined as follows:

> An individual may not drive, operate or be in actual physical control of the movement of a vehicle under any of the following circumstances: (2) The individual is under the influence of a drug or combination of drugs to a degree which impairs the individual's ability to safely drive, operate or be in actual physical control of the movement of the vehicle.

The Superior Court in *Commonwealth v. Terrach* summarized the relevant case law:

> In *Williamson*, a police officer found the driver slumped over the steering wheel and observed that she had bloodshot eyes, was

---

[79] *Commonwealth v. Tejada*, 107 A.3d 788, 792 (Pa. Super. Ct. 2015).
[80] *Id.*
[81] *Commonwealth v. Lambert*, 2002 PA Super 82, ¶ 5, 795 A.2d 1010, 1014 (2002)

lethargic, and had slow, incoherent speech. *Williamson,* 962 A.2d at 1201–02. The driver failed two field sobriety tests. A urine screen was positive for prescription drugs. *Id.* at 1202. We held that testimony of erratic driving, coupled with proof that drugs were present, were together sufficient to prove that the operator's ability to drive safely was impaired. *Id.* at 1204. More recently, in *Griffith,* witness observations of erratic driving, police observations of the driver, failed field sobriety tests, and prescription drugs in the driver's system, together sufficed to prove driving under the influence. *Griffith,* 32 A.3d at 1233–34. Our Supreme Court held that the relevant inquiry was whether the drugs in the driver's system were impairing the person's ability to drive. The Court found that police observations and a failed sobriety test sufficed to satisfy the inquiry, even without expert testimony. *Id.* at 1240."[82]

When viewed in the light most favorable to the Commonwealth as the verdict winner, we find there was sufficient evidence to find Appellant guilty of DUI: Controlled Substance – Impaired Ability – 1st Offense.

As indicated by the evidence in the Background section of this opinion, there was sufficient evidence for this Court to find the Appellant guilty of this offense. Specifically, Mr. Grove's testimony about Appellant's erratic driving into Mr. Grove's side of the lane towards Grove, Officer O'Brien's testimony about Appellant's behavior and inability to complete any of the sobriety tests, and Appellant's admission to Officer O'Brien that she was taking those

---

[82] *Commonwealth v. Tarrach,* 2012 PA Super 82, 42 A.3d 342, 346 (2012).

22

prescriptions.

This Court acknowledges that Appellant was on multiple medications and had physical problems that may have affected her balance. However, Officer O'Brien's testimony that Appellant had balance problems standing still to the degree that she was swaying almost four inches while standing still, her inability to pick up a paper and other behaviors indicated narcotics use. Interestingly Officer O'Brien had also pointed out that Appellant's behavior was worse than many DUI's that Officer O'Brien had observed. Based on all of the evidence, Appellant was too impaired to drive.

This Court did take into careful consideration Dr. Guzzardi's testimony, however his testimony was underwhelming. As discussed in the Background section of this opinion, Dr. Guzzardi indicated that the variety of medications that Appellant was on could cause impairment to a person when driving if they had not built up a tolerance to the medication, if they had stopped the medication and resumed at a later time, or if they had taken more than the recommended dose. Dr. Guzzardi could not testify to how much Appellant was, in actuality, taking of each medication or whether or not she was taking the medication consistently such that she would have a tolerance to the

23

medication's side effects.

Appellant was clearly taking multiple drugs and Appellant's behavior and actions, as testified to by Grove and Officer O'Brien clearly indicated that Appellant was impaired. Based on all of the evidence, there was sufficient evidence to conclude that Appellant's combination of medication rendered Appellant incapable of driving safely, and thus there was sufficient evidence to find Appellant guilty of this offense beyond a reasonable doubt.

## 4. As to Appellant's fourth ground for the appeal, the finding of guilty was not against the weight of the evidence on the DUI offense.

Appellant contends that finding Appellant guilty of DUI went against the weight of the evidence. This Court finds that the conclusion did not go against the weight of the evidence. A challenge to the weight of the evidence is distinct from a challenge to the sufficiency of the evidence.[83] The standard for weight of the evidence challenges in non-jury trials is as follows:

---

[83] *Commonwealth v. Widmer*, 744 A.2d at 751 (stating that "[a] claim challenging the sufficiency of the evidence, if granted, would preclude retrial under the double jeopardy provisions of the Fifth Amendment to the United States Constitution, and Article I, § 10 of the Pennsylvania Constitution, whereas a claim challenging the weight of the evidence if granted would permit a second trial.") (internal citations omitted).

24

A claim alleging the verdict was against the weight of the evidence is addressed to the discretion of the trial court. Accordingly, an appellate court reviews the exercise of the trial court's discretion; it does not answer for itself whether the verdict was against the weight of the evidence. It is well settled that the [fact-finder] is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses, and a new trial based on a weight of the evidence claim is only warranted where the [factfinder's] verdict is so contrary to the evidence that it shocks one's sense of justice. In determining whether this standard has been met, appellate review is limited to whether the trial judge's discretion was properly exercised, and relief will only be granted where the facts and inferences of record disclose a palpable abuse of discretion.[84]

As described above, the evidence was sufficient to support the convictions, and there is no reasonable argument that this Court mis-weighed the evidence or abused its discretion. It was within this Court's discretion whether to find the testimony of the witnesses credible. Therefore, the Court will not disturb the verdict.

---

[84] *Commonwealth v. Karns*, 2012 PA Super 154, 50 A.3d 158, 165 (2012) (quoting *Commonwealth v. Houser*, 610 Pa. 264, 276, 18 A.3d 1128, 1135–36 (2011)).

25

**5. *In response to Appellant's fifth ground for the appeal, this court did not err when it did not admit the ARIDE manual.***

Under the Pennsylvania Rules of Evidence, "the following item . . . of evidence is self-authenticating; they require no extrinsic evidence of authenticity in order to be admitted: . . . "official Publications. A book, pamphlet, or other publication purporting to be issued by a public authority."[85] Like the second ground for the appeal, the standard on the admissibility of evidence is as follows:

> '[T]he admissibility of evidence is a matter addressed to the sound discretion of the trial court and ... an appellate court may only reverse upon a showing that the trial court abused its discretion.' 'An abuse of discretion is not a mere error in judgment but, rather, involves bias, ill will, partiality, prejudice, manifest unreasonableness, or misapplication of law.[86]

As the Background section in this opinion discusses, the manual does not necessarily prove that the HGN test and LOC test were the same, and defense counsel's method to admit the manual into evidence was improper. While the Court was willing to enter it into evidence if the Commonwealth agreed, the

---

[85] Pa. R. Evid. 902.
[86] *Commonwealth v. Cox*, 115 A.3d 333, 336, appeal denied, 124 A.3d 308 (Pa. 2015) (internal citations omitted).

26

Commonwealth did not. The Defense Counsel could not provide any case law that the HGN test and LOC test were the same and the Commonwealth even pointed out that those tests were in separate sections in the ARIDE manual. Here, it was in this Court's discretion whether or not to admit the ARIDE manual into evidence after the trial had occurred. Denying the admission into evidence of the ARIDE manual did not involve bias, ill will, partiality, prejudice, manifest unreasonableness or a misapplication of law. For the above reasons, this Court respectfully requests that the Superior Court find this ground for the appeal meritless.

## CONCLUSION

In conclusion, this Court respectfully requests that the Superior Court find Appellant's first ground for the appeal meritless and to affirm the jury verdict.

BY THE COURT:

Dated: **January 5, 2017**     **HARRY M. NESS, JUDGE**

27