COMMONWEALTH of Pennsylvania,
Appellant

v.

Tanya Lea WILLIAMSON, Appellee.

Superior Court of Pennsylvania.

Submitted July 7, 2008.
Filed Dec. 2, 2008.

Nancy A. Duffield, Assistant District Attorney, Uniontown, for Commonwealth, appellant.

Jeffery S. Proden, Uniontown, for appellee.

BEFORE: MUSMANNO, ORIE MELVIN and KLEIN, JJ.

OPINION BY KLEIN, J.:

¶ 1 The Commonwealth appeals [1] from the trial court's order granting Defendant Tanya Lea Williamson's motion to suppress the results of a urine laboratory test which positively indicated the presence of benzodiazepines [2] in her blood.[3]

---

1. The Commonwealth has certified that the trial court's suppression order will substantially handicap or terminate the prosecution against Williamson. *See* Pa.R.A.P. 311(d).

2. Benzodiazepines are a class of drugs which include, in part, Xanax, Klonopin and Valium.

3. The Commonwealth sets forth two claims on appeal: (1) the lower court erred in finding that the toxicologist's report was inadmissible; and (2) the lower court erred in finding the toxicologist's report was inadmissible because that issue (the amount of the drug) is a matter for the fact finder and not a proper suppression issue. Because they are inter-

We find the test admissible and, therefore, reverse and remand for trial.[4]

¶ 2 Williamson was charged with violating 75 Pa.C.S.A. § 3802(d)(2) (Driving under Influence of a Drug or Combination of Drugs) and related driving offenses. Prior to trial the lower court suppressed the results of Williamson's post-arrest urine test because the toxicologist's report did not state the amount of the drug found in her blood. The trial court found that 75 Pa.C.S.A. § 1547, a statute that discusses the admissibility of chemical tests in section 3802 prosecutions, created a mandatory requirement that chemical test reports express an "amount" of "alcohol or controlled substance" appearing in the defendant's blood in order for such results to be admissible in this section 3802 case. Specifically, the trial judge held that since the introductory paragraph of subsection 1547(c)[5] includes the language, "the amount of alcohol or controlled substance in the defendant's blood," then if the amount of the controlled substance is *not* contained in a report, that report is inadmissible. We disagree for two reasons.

¶ 3 First, the purpose of subsection 1547(c) is to outline the approved procedures and equipment (including qualified personnel, licensed laboratories and facilities) used for chemical testing of a person's breath, blood, or urine for relevant summary and criminal proceedings. Here, Williamson did not challenge the admission of the toxicologist's report on any of these bases. Second, in order to convict a defendant for the offense for which Williamson was charged, the Commonwealth does not need to prove or show the *amount* of the controlled substance involved in the prosecution. Rather, the offense only requires proof that the defendant was under the influence to a degree that causes impairment. Therefore, because the specific quantity or amount of the drug in the defendant's system is not an element of the offense, section 1547 is not even applicable to the instant case. Thus, we reverse and remand.

## FACTS

¶ 4 On June 8, 2006, around 12:00 p.m., Pennsylvania State Trooper Creighton Callas was dispatched to State Route 21 near McClellandtown for a report of erratic driving. According to Trooper Callas, he arrived at Sweet Peas Service Station and noticed Williamson parked at the gas pumps, slumped over the steering wheel of her Ford Explorer. Trooper Callas says that when he approached her, her eyes were bloodshot, her movement lethargic,

related, we will address these claims simultaneously.

4. "When the Commonwealth appeals from a suppression order, we follow a clearly defined standard of review and consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted. The suppression court's findings of fact bind an appellate court if the record supports those findings. The suppression court's conclusions of law, however, are not binding on an appellate court, whose duty is to determine if the suppression court properly applied the law to the facts." *Commonwealth v. Boulware*, 876 A.2d 440, 442 (Pa.Super.2005).

5. The full text of the introductory paragraph of section 1547(c) is as follows:

**Test results admissible in evidence.**—In any summary proceeding or criminal proceeding in which the defendant is charged with a violation of section 3802, or any other violation of this title arising out of the same action, the amount of alcohol or controlled substance in the defendant's blood, as shown by chemical testing of the person's breath, blood or urine, which tests were conducted by qualified persons using approved equipment, shall be admissible in evidence.

and her speech was slowed and incoherent. He asked her to exit the vehicle and at 1:10 p.m., conducted a field sobriety tests. Williamson failed the "One Leg Stand" and the "Walk and Turn." While Trooper Callas interviewed Williamson at the scene, she admitted to having taken medications, specifically Klonapin and Methadone, at 7:30 a.m. and 8:00 a.m., respectively. Intoxication Report, 6/8/206 at 2. Trooper Callas then placed Williamson under arrest for suspicion of DUI.

¶ 5 After placing Williamson in his cruiser, Trooper Callas interviewed Aaron Trump and Jennifer Tressler. They both stated to him that they had been driving behind Williamson and witnessed her "crossing the center line into oncoming traffic and swerving erratically." Pennsylvania State Police Intoxication Report, Continuation Sheet. They also said that Williamson had come close to striking a large dump truck driving in the opposite lane.

¶ 6 Trooper Callas transported Williamson to Uniontown Hospital where she submitted a urine sample. The sample, examined by Pc Laboratories Director Dr. Winek, tested positive for benzodiazepine, which is consistent with Klonopin. The report compiled by Dr. Winek does not state the amount of the drug in Williamson's blood, it merely positively notes the presence of benzodiazepine.[6]

¶ 7 After a hearing on Williamson's omnibus pre-trial motion to suppress and the submission of memoranda of law from both parties, Judge Gerald R. Solomon granted Williamson's motion to suppress the evidence from the urine report.[7] This appeal followed.

## DISCUSSION

(1) *Admissibility of Laboratory Report under 75 Pa.C.S.A. § 1547(c)*

¶ 8 The Commonwealth suggests that it was error for the trial court to suppress the report of the Commonwealth's toxicologist because it did not set forth an amount or quantity of the drug (benzodiazepine) found in Williamson's blood. We agree that the trial court erred in holding the report inadmissible. The trial judge found that the language of section 1547 requires that in order for a chemical test to be admissible in a section 3802 prosecution, the test *must* express an amount of the given controlled substance, drug or alcohol. "Consequently, since the ... report failed to set forth an amount of controlled substance in [Williamson's] blood, the report cannot be admissible." Trial Court Opinion, 3/5/2008, at 7.

¶ 9 Merely because section 1547(c) states that a report containing the amount of alcohol or controlled substance in a defendant's blood is admissible as evidence in a section 3802 prosecution does not mean that a report *without* an amount is inadmissible. This is especially significant here where: subsection 1547(c) is intended to outline the proper approved procedures and equipment to be utilized so that such test results can be deemed admissible in summary and criminal proceedings, and (2) the specific criminal charge for which Williamson was charged, 75 Pa.C.S.A. § 3802(d)(2), does not require any specific amount of a drug (prescription or otherwise) for a conviction.[8]

---

**6.** A positive benzodiazepine result is consistent with Klonopin, a medication Williamson told Trooper Callas that her doctor had prescribed for her.

**7.** The defense failed to subpoena Dr. Winek as a witness for the motion to suppress hearing and, instead, defense counsel indicated that he would be able to make any arguments about the admissibility of the report without Dr. Winek present.

**8.** Section 3802(d)(2), the statute under which Williamson was charged, provides that:

An individual may not drive, operate or be in actual physical control of the movement of a vehicle under any of the following

(a) *Cases Involving Application of Subsection 1547(c)*

¶ 10 Cases discussing the applicability of subsection 1547(c) have solely dealt with the issue of whether testing devices have been approved or are otherwise certified by the Department of Health in order to have tests from those devices admitted at trial. For instance, in *Commonwealth v. Cook*, 277 Pa.Super. 152, 419 A.2d 707 (1980), the defendant sought to suppress blood test results from a machine that had analyzed his blood alcohol content after being arrested for operating a vehicle under the influence. In that case, the defendant specifically challenged the machinery used to test his blood, claiming that the machine had not been approved by the Department of Health (DOH) at the time of testing. *Id.* Our Court cited subsection 1547(c) for the proposition that the machine in question had to have been approved by the DOH and operated by qualified personnel in order for the test to be admissible in evidence at defendant's trial. *Id.* at 708.

¶ 11 Similarly, in *Commonwealth v. Boerner*, 268 Pa.Super. 168, 407 A.2d 883 (1979), our Court was again asked to interpret section 1547(c). In that case the defendant contended that the breathalyzer machine used on the date of the test had not yet gained DOH certification, but only gained the certification subsequent to the defendant's testing. The *Boerner* Court held that it was error to have admitted the test results, but that the error was harmless in light of the other overwhelming evidence of the defendant's intoxication.

¶ 12 Furthermore, in *Commonwealth v. McGinnis*, 511 Pa. 520, 515 A.2d 847 (1986), our Supreme Court stated that while it had not yet had the opportunity to consider section 1547(c), it acknowledged

the legislative intent behind enacting that subsection:

> The admissibility of any experimental or scientific evidence depends upon *presenting an adequate foundation.* Our Legislature has provided by statute that the results of a chemical test of a person's breath, blood or urine may be admitted into evidence in any summary proceeding or criminal proceeding in which a defendant is charged with driving a motor vehicle while under the influence of alcohol, if the test is conducted by qualified personnel using equipment approved by the Department of Health. While we have not had occasion to consider [section 1547(c)], the Superior Court has consistently concluded that for the results of a breathalyzer test to be admitted at trial, proof must be submitted by the party seeking the admission of test results, showing that the test was administered on equipment approved by the Department of Health and that such approval was published in the *Pennsylvania Bulletin.* Such an application of the approval requirements is consistent with the clear, unambiguous language of the statute which permits for purposes of trial the introduction of the test results which are conducted on departmentally approved equipment.

515 A.2d at 849–50 (emphasis added). Ultimately, the Supreme Court held in *McGinnis* that because it was uncontroverted that the breathalyzer machine (as modified) was not approved by the DOH, it was clear that machine's test results were inadmissible as evidence of the defendant's intoxication. *Id. See also Commonwealth v. Burdge*, 345 Pa.Super. 187, 497 A.2d

circumstances: (2) the individual is under the influence of a drug or combination of drugs **to a degree that impairs the individu-** **al's ability to safely drive, operate or be in actual physical control of the movement of the vehicle.** (emphasis added).

1367 (1985) (defendant challenged admission of intoxilyzer results since machine used had not been approved prior to test; court held approval of machine prior to trial satisfies section § 1547(c)(1)); *Commonwealth v. Benson,* 280 Pa.Super. 20, 421 A.2d 383 (1980) (defendant challenged admissibility of breathalyzer test results under section 1547(c) where no regulations approving use of the device by DOH existed at time test taken and at time of trial).

¶ 13 Thus, as it can be gleaned from the discussion of section 1547(c) in the above-mentioned appellate cases, the purpose behind that statute is to outline the necessary regulations and procedures that have been approved in this Commonwealth for chemical test results to be admissible in relevant legal proceedings. Here, neither the accuracy of the test results nor the procedures, equipment or facilities used in procuring those results are at issue. Thus, this subsection is not applicable to the instant case.

(b) *Elements of Subsection 3208(d)(2) Offense*

¶ 14 Finally, we find our result today also driven by the fact that in order to convict Williamson under section 3208(d)(2), the Commonwealth only had to prove that she was "under the influence of a drug to a degree that impairs" his or her ability to safely driver or operate a vehicle. *See Commonwealth v. Collins,* 810 A.2d 698 (Pa.Super.2002) (where defendant's urine sample "tested positive for phencyclidine or PCP," she was properly convicted of driving under influence of controlled substance in violation of 75 Pa.C.S.A. § 3731(a)(2), the predecessor of section 3802(d)(2)). Section 3802(d)(2) does *not* require that any amount or specific quantity of the drug be proven in order to successfully prosecute under that section. *Compare* 75 Pa.C.S.A. § 3802(c) (requiring that individual's alcohol concentration in his or her blood or breath be at least 0.16% to be convicted of offense). Inarguably, the test proves there was *some* amount of benzodiazepine in Williamson's blood; we just do not know the exact quantity.

¶ 15 Here, when the Commonwealth charged Williamson with section 3802(d)(2), it was merely attempting to provide the results of the urine test as *part* of its evidentiary case to prove beyond a reasonable doubt that Williamson was "under the influence of a drug ... to a degree that impair[ed her] ability to safely drive." These test results, however, were by no means the sole evidence used to prove that Williamson violated section 3802(d)(2). Among other things, the Commonwealth was planning to provide the following evidence for its prosecution of Williamson: eyewitness testimony from Aaron Trump and Jennifer Tressler regarding Williamson's erratic driving prior to her arrest; testimony from arresting officer Trooper Callas regarding Williamson's demeanor and her failure of two field sobriety tests; and Dr. Winek's laboratory report that Williamson's urine tested positive for the presence of benzodiazepines in her blood. All of this evidence supports the Commonwealth's case-in-chief to fulfill its burden of proof that Williamson was unfit to operate a vehicle as defined in section 3802(d)(2).

(2) *Commonwealth v. Etchison*

¶ 16 The trial court and Williamson supports the suppression of the laboratory results based upon case law[9] that has

---

**9.** The lower court cites a trial court decision where the issue concerned whether the breathalyzer machine used on a DUI-defendant had been properly calibrated according to the procedures outlined by statute. As discussed *supra,* here no one is claiming that the devices used to perform the test were not properly calibrated for accuracy or approved by the Department of Health (DOH), or that the laboratory and/or the persons that per-

excluded "similar evidence from trial on the basis of a failure to comply with chemical testing requirements." Trial Court Opinion, 3/5/2008, at 8.

¶ 17 In her brief, Williamson specifically relies upon our Court's decision, *Commonwealth v. Etchison*, 916 A.2d 1169 (Pa.Super.2007), to support the suppression of her urine test results. *Etchison*, however, is not on point as it concerned a sufficiency of the evidence claim under section 3802(d)(2), not an admissibility of evidence issue. In *Etchison*, the defendant was convicted, after a bench trial, of driving under the influence in violation of 75 Pa. C.S.A. §§ 3802(d)(1)(i), (2), and (3). Etchison had been stopped by a trooper for traveling in the wrong direction on an exit ramp. The trooper detected the smell of alcohol and attempted field sobriety tests which Etchison failed. Etchison later consented to blood tests which revealed the presence of alcohol (.05% BAC); a subsequent drug screening indicated 53 nanograms of metabolites of cannabinoids as well.

¶ 18 On appeal from his judgment of sentence, Etchison claimed that there was insufficient evidence to convict him under section 3802(d)(2) because the Commonwealth's expert witness, a toxicologist, testified on cross-examination that the presence of metabolites is not an indication of present impairment, but only that a substance was ingested sometime previously. Because the expert failed to offer an opinion that the defendant was under the influence of the substance (marijuana) at the time he drove, let alone that he was under the influence to a degree that impaired his ability to safely drive, Etchison argued his conviction could not stand. The mere fact that Etchison made a mistake and was driving the wrong way on a one-way street does not mean he made that mistake because of drug or alcohol impairment.

¶ 19 Our Court agreed with Etchison, finding that "the Commonwealth presented no evidence to support a conclusion that Appellant was under the influence of a drug or combination of drugs at the time he was stopped, such that his ability to drive was impaired." *Id.* at 1172. Thus, it held that the evidence was insufficient to convict and reversed Etchison's section 3802(d)(2) [10] conviction. *Id.* A large part of our Court's decision rested upon the fact that the ingested drug in *Etchison*, marijuana, is a fat-soluble drug that can stay metabolized in the blood months after its consumption. Moreover, in *Etchison*, the presence of marijuana in the defendant's blood was the Commonwealth's *only* proof to support its prosecution under section 3802(d)(2).

¶ 20 Here, the facts are not like those in *Etchison*. First, in *Etchison* the case went to trial and the toxicologist's report was admitted as evidence to support the prosecution's case. Additionally, contrary to the trial court's conclusion, the Commonwealth did not intend to use the toxicologist's report indicating the presence of benzodiazepines as its sole evidence that Williamson was unfit to drive. It had a number of eyewitnesses who testified to show that Williamson was unfit to drive at the time she was stopped, as well as the arresting officer's first-hand observations of Williamson at the crime scene. Finally,

formed the test had not been licensed, qualified and approved by the DOH. See 75 Pa. C.S.A. § 1547(c)(2)(i). Moreover, trial court cases are not binding on this Court.

10. Our Court, however, affirmed Etchison's sentence under section 3802(d)(1)(i), but reversed his sentence under section 3802(d)(3) (requiring individual be under the combined influence of alcohol and a drug or combination of drugs which impairs driving ability). Our Court further found all three crimes constitutional and not violative of either equal protection rights or due process rights.

perhaps Williamson's own admission to having ingested two different types of drugs (one of which was positively indicated in her urine test) just hours before she was stopped by Trooper Callas, is a critical distinguishing factor between the facts of the present case and *Etchison.* *See id.* at 1175 (Bender, J., concurring and dissenting) ("Notably, the Commonwealth presented no evidence that Appellant had recently ingested marijuana.").

¶ 21 Order reversed. Case remanded for trial. Jurisdiction relinquished.