J-S79019-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ASHLEY MARIE SCHAEFFER | : | No. 485 MDA 2018 |

Appeal from the Order Entered March 7, 2018
In the Court of Common Pleas of Lycoming County Criminal Division at
No(s):  CP-41-CR-0000168-2017

BEFORE:  SHOGAN, J., OLSON, J., and MUSMANNO, J.

MEMORANDUM BY OLSON, J.:                **FILED MAY 10, 2019**

The Commonwealth of Pennsylvania (Commonwealth), appeals from the order entered on March 7, 2018, granting a motion to suppress filed by Ashley Marie Schaeffer (Schaeffer) that precluded the admissibility of blood tests regarding two chemical compounds, Buprenorphine and Norbuprenorphine,[1] allegedly found in her bloodstream following a motor vehicle accident.[2]  Upon review, we affirm.

---

[1] "Buprenorphine is a substance similar to methadone in that both are prescribed and administered for the treatment, maintenance or detoxification of persons[.]"  ***Airport Professional Office Center 100 Condominium Ass'n v. Zoning Hearing Bd. of Moon Tp.***, 20 A.3d 649, 651 (Pa. Cmwlth. 2011).  Buprenorphine is also known as "suboxone" and is classified as a Schedule III controlled substance.  ***See*** 35 P.S. § 780-104(3)(i)(11). Norbuprenorphine is a metabolite of Buprenorphine.

[2]  Our Rules of Appellate Procedure permit the Commonwealth to take an interlocutory appeal as of right when the Commonwealth certifies that the

We briefly summarize the facts of this case, as set forth in the affidavit of probable cause. The Commonwealth charged Schaeffer with one count of driving under the influence (DUI) of a combination of controlled substances – Xanax, Buprenorphine, and Norbuprenorphine, as well as, three counts each of endangering the welfare of children and recklessly endangering a person.[3] The charges stemmed from an incident on July 15, 2016, wherein police responded to a one-car accident on Hastings Street in Lycoming County. When a police officer arrived, he allegedly found Schaeffer standing next to a car that had struck a fire hydrant. When asked if there were additional passengers, Schaeffer purportedly told the officer that her twin daughters and their friend were in the vehicle during the accident, but she had taken the three minor girls to a nearby apartment after the crash. Schaeffer could not identify the woman with whom she left the children, but the officer located her and confirmed that the children were safe. During the investigation, the officer observed two prescription pill bottles in Schaeffer's opened purse. The officer, however, could not identify the prescriptions. Schaeffer claimed that she had a prescription for Xanax to treat anxiety. Schaeffer ultimately consented to perform field sobriety tests and the investigating officer

_____

order will "terminate or substantially handicap the prosecution." Pa.R.A.P. 311(d). The Commonwealth did so in this case and, thus, we have jurisdiction to hear the appeal.

[3] 75 Pa.C.S.A. §§ 3802(d)(2), 18 Pa.C.S.A. § 4304, and 18 Pa.C.S.A. § 2705, respectively.

determined that the results indicated that Schaeffer was under the influence

of narcotics and not capable of safe driving.

As the trial court states, the case progressed as follows:

After being taken into custody, [Schaeffer] was transported to Williamsport [H]ospital for a blood draw. Once at the hospital and after being read [her rights regarding consent, Schaeffer] agreed to submit to a blood draw. The blood test results were positive for, among other things,[4] Buprenorphine and Norbuprenorphine. Buprenorphine is a Schedule III controlled substance.[5] Norbuprenorphine is a metabolite of Buprenorphine. According to the blood test results, the amount of Buprenorphine found in [Schaeffer's] blood was 1.8 ng/ml. The amount of Norbuprenorphine found in [Schaeffer's] blood was 1.3 ng/ml.

Trial Court Opinion, 3/7/2018, at 1.

Prior to trial, Schaeffer filed an omnibus pre-trial motion pursuant to 75

Pa.C.S.A. § 1547(c) seeking, *inter alia*, to preclude the admissibility of the

blood test results pertaining, specifically, to Buprenorphine and

Norbuprenorphine. Section 1547 states, in pertinent part:

§ 1547. Chemical testing to determine amount of alcohol or controlled substance

(a) General rule.--Any person who drives, operates or is in actual physical control of the movement of a vehicle in this Commonwealth shall be deemed to have given consent to one or more chemical tests of breath or blood for the purpose of determining the alcoholic content of blood or the presence of a controlled substance if a police officer has reasonable grounds to believe the person to have been

---

[4] The test results also revealed the presence of 61 ng/ml of Xanax in Schaeffer's bloodstream. That result is not at issue herein.

[5] Schaeffer concedes that she did not have a prescription for Buprenorphine or Norbuprenorphine. N.T., 2/27/2018, at 13.

driving, operating or in actual physical control of the movement of a vehicle in violation of section 1543(b)(1.1) (relating to driving while operating privilege is suspended or revoked), 3802 (relating to driving under influence of alcohol or controlled substance) or 3808(a)(2) (relating to illegally operating a motor vehicle not equipped with ignition interlock).

\*　　　　\*　　　　\*

(c)　　Test results admissible in evidence.--In any summary proceeding or criminal proceeding in which the defendant is charged with a violation of section 3802 or any other violation of this title arising out of the same action, the amount of alcohol or controlled substance in the defendant's blood, as shown by chemical testing of the person's breath or blood, which tests were conducted by qualified persons using approved equipment, shall be admissible in evidence.

\*　　　　\*　　　　\*

(4) For purposes of blood testing to determine the amount of a Schedule I or nonprescribed Schedule II or III controlled substance or a metabolite of such a substance, **the Department of Health shall prescribe minimum levels of these substances which must be present in a person's blood in order for the test results to be admissible in a prosecution** for a violation of section 1543(b)(1.1), 3802(d)(1), (2) or (3) or 3808(a)(2).

75 Pa.C.S.A. § 1547 (emphasis added).

The trial court held a suppression hearing on February 27, 2018. It summarized the arguments presented therein as follows:

The parties concede[d] that the Pennsylvania Department of Health ha[d] not prescribed minimum levels of these substances which must be present in a person's blood in order for the tests to be admissible in a prosecution for a violation of 75 Pa.C.S.A. § 3802(d)(2), driving under the influence of a controlled substance (impaired ability to safely drive).

- 4 -

[Schaeffer] argue[d] that pursuant to 75 Pa.C.S.A. § 1547(c)(4) for the purposes of blood testing to determine the amount of a non-prescribed Schedule II or Schedule III controlled substance or metabolite of such a substance, the Department of Health shall prescribe minimum levels of these substances which must be present in a person's blood in order for the test results to be admissible in a prosecution for a violation of, among other sections, § 3802(d)(2).

The Commonwealth argue[d] that pursuant to 75 Pa.C.S.A. § 1547(c)(4), the Department of Health published a notice of the minimum levels of, among other things, non-prescribed Schedule II and non-prescribed Schedule III controlled substances or their metabolites in 45 Pa. Bulletin 3638. This Pennsylvania Bulletin was published on Saturday, July 4, 2015. While it [did] not list a schedule or the minimum quantitation limits in terms of nanograms/millimeter of Buprenorphine or Norbuprenorphine, it does note the following language:

> The Department recognizes that testing may be conducted for controlled substances and metabolites not listed in this notice. When testing is necessary, interested parties should contact the laboratory performing the test to inquire as to that laboratory's specific method of testing, the equipment used and any policies or procedures employed by that laboratory to ensure that the test results are valid. In subsequent notices, the Department will revise, as needed, the minimum levels of controlled substances or metabolites already included in this notice and add new controlled substances or metabolites when warranted.

Trial Court Opinion, 3/7/2018, at 2-3.

The trial court determined that there was no ambiguity in the language of the statute at issue. More specifically, it opined that the clear language of 75 Pa.C.S.A. § 1547(c)(4) required the Health Department to set minimum levels for non-prescribed Schedule II and III controlled substances and metabolites in order for blood test results to be admissible in prosecutions for

DUI - controlled substances under 75 Pa.C.S.A. § 3802(d)(2). The parties concerted that Buprenorphine is a Schedule III narcotic, Norbuprenorphine is its metabolite, and that the Health Department had not set minimum levels for those substances. Accordingly, the trial court determined that the test results showing levels of Buprenorphine and Norbuprenorphine in Schaeffer's bloodstream were not admissible under Section 1547(c)(4) in a prosecution for DUI pursuant to 75 Pa.C.S.A. § 3802(d)(2). As such, it granted Schaeffer's request for suppression by order and opinion entered on March 7, 2018. This timely appeal resulted.[6]

On appeal, the Commonwealth presents the following issue for our review:

I. Whether the suppression court erred in suppressing blood test evidence showing the presence of the controlled substance, Buprenorphine, and its metabolite, Norbuprenorphine, because the Department of Health did not specifically publish the minimum level of those substances which must be present for the test to be admissible in the *Pennsylvania Bulletin*, according to 75 Pa.C.S.A. § 1547(c)(4)?

Commonwealth's Brief at 10.

_____

[6] The Commonwealth filed a notice of appeal on March 19, 2018. In its notice of appeal, the Commonwealth certified that the order terminated or substantially handicapped the prosecution pursuant to Pa.R.A.P. 311(d). On March 20, 2018, the trial court directed the Commonwealth to file a concise statement of errors complained of on appeal under Pa.R.A.P. 1925(b). The Commonwealth complied timely on April 5, 2018. On May 30, 2018, the trial court filed an opinion in accordance with Pa.R.A.P. 1925(a), relying upon its earlier decision issued on March 7, 2018.

Our standard of review regarding the grant of a suppression motion is well settled:

> When the Commonwealth appeals from a suppression order, we follow a clearly defined standard of review and consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted. The suppression court's findings of fact bind an appellate court if the record supports those findings. The suppression court's conclusions of law, however, are not binding on an appellate court, whose duty is to determine if the suppression court properly applied the law to the facts.
>
> Our standard of review is restricted to establishing whether the record supports the suppression court's factual findings; however, we maintain *de novo* review over the suppression court's legal conclusions.

*Commonwealth v. Korn*, 139 A.3d 249, 252–253 (Pa. Super. 2016) (internal citations and quotations omitted).

Moreover,

> [b]ecause this is a matter of statutory interpretation, our scope of review is plenary and the standard of review is *de novo*. As always, when interpreting statutory provisions, [reviewing courts] aim to ascertain and effectuate the intent of the General Assembly. 1 Pa.C.S.A. § 1921(a). The best indication of the General Assembly's intent may be found in the plain language of the statute. "When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S.A. § 1921(b).

*Commonwealth v. Popielarcheck*, 190 A.3d 1137, 1140 (Pa. 2018) (internal case citations omitted).

Furthermore:

> We presume "that the General Assembly intends the entire statute to be effective and certain," and thus construe a statute to give effect to all of its provisions. 1 Pa.C.S.A. § 1922(2). […]

> Furthermore, where general and specific statutory provisions conflict, we attempt to construe the two provisions to give effect to both provisions. 1 Pa.C.S.A. § 1933. It is only when two provisions irreconcilably conflict that "the special provisions shall prevail and shall be construed as an exception to the general provision, unless the general provision shall be enacted later and it shall be the manifest intention of the General Assembly that such general provision shall prevail." ***Id.***

***In Interest of R.A.F.***, 149 A.3d 63, 67 (Pa. Super. 2016).

On appeal, the Commonwealth argues that the trial court erred by viewing Section 1547(c)(4) in isolation rather than viewing Section 1547(c) in its entirety. Commonwealth's Brief at 17. More specifically, it argues:

> As the language of the statute indicates, the introductory paragraph of the section indicates that chemical tests for blood undertaken by qualified persons with approved equipment "shall" be admitted into evidence, while (c)(4) says that the Department [of Health] "shall" prescribe minimum levels of the substances in order [for] the test results to be admissible into evidence. Thus, to follow the suppression court, the unambiguous intent of the General Assembly was that chemical test evidence for blood shall be admitted if tested by qualified persons with approved equipment, but that the requirements must take a back seat and that evidence must be precluded from admission at trial, because the Department [of Health] did not publish the minimum level of the controlled substance. Therefore, such interpretation rises to level of an ambiguity as it relates to the *preclusion* of the evidence at trial for that sole purpose.

***Id.*** at 21-22 (emphasis in original).

While the Commonwealth concedes that there are "no reported cases interpreting § 1547(c)(4)," it relies upon this Court's decision in ***Commonwealth v. Williamson***, 962 A.2d 1200 (Pa. Super. 2008) "which [] interpreted § 1547(c) as a whole" in support of its position that the trial court erred. Commonwealth's Brief at 23. The Commonwealth contends that in

*Williamson*, "a panel of the Superior Court interpreted § 1547(c) after a trial court suppressed a report of a urine test, which indicated a positive presence of a controlled substance, when that report did not indicate the amount of a controlled substance present, although § 1547(c) is explicit that the *amount* of alcohol or controlled substance obtained through chemical testing shall be admissible in evidence." *Id.* at 23-24. The Commonwealth maintains that the *Williamson* Court determined:

> Merely because section 1547(c) states that a report containing the amount of alcohol or controlled substance in a defendant's blood is admissible as evidence in a section 3802 prosecution does not mean that a report without an amount is inadmissible. This is especially significant here where: subsection 1547(c) is intended to outline the proper approved procedures and equipment to be utilized so that such test results can be deemed admissible in summary and criminal proceedings, and (2) the specific criminal charge for which Williamson was charged, 75 Pa.C.S.A. § 3802(d)(2), does not require any specific amount of a drug (prescription or otherwise) for a conviction.

Commonwealth's Brief at 24, *citing* *Williamson*, 962 A.2d at 1202. The *Williamson* Court stated that the purpose behind Section 1547 is to outline the necessary regulations and procedures that have been approved for chemical test results to be admissible in legal proceedings. *Id.* The Commonwealth argues that preclusion of blood test results is not warranted, however, when the laboratory is approved by the Department of Health and the procedure and accuracy of the test is not at issue. *Id.* at 26-27. As such, the Commonwealth argues that it is, therefore, reasonable to interpret Section 1547(c) to mean that "a test which has a level of a controlled substance below

the prescribed minimum level should be precluded, but that if a minimum level has not been set on a specific controlled substance or its metabolite, such evidence should not be precluded unless a defendant can raise issues of accuracy on procedural irregularity." *Id.* at 27.

Finally, in arguing that the statute is ambiguous, the Commonwealth points to provisions of the Department of Health's bulletin to explain the General Assembly's intent in enacting Section 1547(c). The Commonwealth posits:

> As explained by the Department [of Health], the setting of the minimum level [of a controlled substance or metabolite] is entirely dependent on how each individual laboratory, already approved by the Department [of Health] to conduct blood testing for controlled substances, processes the blood test to confirm the presence of a controlled substance and that laboratories are not required to actually test at a minimum level. While the Department lists certain controlled substances and metabolites, when the specific controlled substance is not listed, an interested party should contact the laboratory for the specific method of testing, equipment, and any policies or procedures to ensure that the results are valid. Thus, those interested to contact the laboratory provides a more appropriate minimum level for the test for that specific laboratory, which complies with the stated purpose of the statute.

*Id.* at 29.

In this case, the trial court concluded:

> [It] did not see any ambiguity in the statutory provision as enacted. [Schaeffer] is charged with driving under the influence of controlled substances in violation of 75 Pa.C.S.A. § 3802(d)(2). The Department [of Health] is required to prescribe minimum levels of non-prescribed Schedule II and Schedule III controlled substances or metabolites of such substances which must be present in a person's blood in order for the test results to be admissible in a prosecution for the offense to which [Schaeffer]

- 10 -

stands charged. The parties agreed that Buprenorphine is a non-prescribed Schedule III controlled substance and Norbuprenorphine is a metabolite of Buprenorphine. The Department [of Health] has not prescribed minimum levels for these controlled substances. Accordingly, the test results are not admissible pursuant to the clear and unambiguous language of 75 Pa.C.S.A. § 1547(c)(4).

The Commonwealth's reliance on the Pennsylvania Bulletin is misplaced. The statute does not give the Department of Health the authority to not list controlled substances or metabolites and refer the "interested" party to the lab for further information. There is nothing in the statute that permits the Department of Health to delegate its statutory duties to the laboratory or facility conducting the test.[7]

---

[7] As we set forth above, the best indication of the General Assembly's intent is found in the plain language of the statute. Here, the Commonwealth relies almost exclusively on the Department of Health's interpretation of Section 1547 as set forth in the Pennsylvania Bulletin. It is only when the words of a statute are not explicit that the intention of the General Assembly may be ascertained by considering: the occasion of and necessity for the statute, the circumstances under which it was enacted, the mischief to be remedied, the object to be attained, the former law (including other statutes upon the same or similar subjects), the consequences of a particular interpretation, the contemporaneous legislative history, and legislative and administrative interpretations of the statute. *See* 1 Pa.C.S.A. § 1921(c). When ascertaining the General Assembly's intent with regard to ambiguous statutory language, courts are to give strong deference to an administrative agency's interpretation of a statute that the agency is charged to enforce. ***Velocity Express v. Pennsylvania Human Relations Com'n***, 853 A.2d 1182, 1185 (Pa. Cmwlth. 2004); ***see also*** 1 Pa.C.S.A. § 1921(c)(8). However,

[courts] need not give deference to an agency where its construction of a statute frustrates legislative intent. Therefore, although courts often defer to an agency's interpretation of the statutes it administers, where ... the meaning of the statute is a question of law for the court, when convinced that the agency's interpretation is unwise or erroneous, that deference is unwarranted.

- 11 -

Trial Court Opinion, 3/7/2018, at 4.

Upon review, we agree with the trial court's assessment. Section 1547(c) permits the admission of chemical blood tests for narcotics and alcohol in a prosecution for any DUI violation pursuant to Section 3802. Section 1547(c) is a general provision. Whereas, Section 1547(c)(4) is a more specific provision. It applies to Schedule I or non-prescribed Schedule II or III controlled substances or metabolites and only to DUI cases involving violations of 75 Pa.C.S.A § 1543(b)(1.1), 75 Pa.C.S.A § 3802(d)(1), (2) or (3) or 75 Pa.C.S.A. § 3808(a)(2). As such, the trial court properly construed Section 1547(c)(4), as an exception to the general provision found at Section 1547(c). The plain language of Section 1547(c)(4) requires the Department of Health to prescribe minimum levels of Schedule III controlled substances and metabolites in order for the test results to be admissible.[8] There is no

_____

**Id.** As discussed below, we find no ambiguity in the statutory language at issue and, therefore, we need not give deference to an administrative interpretation of Section 1547.

[8] We note that a prior panel of this Court reached a different conclusion in an unpublished memorandum. **See Commonwealth v. McCall**, 2016 WL 5853259 (Pa. Super. 2016). However, that panel did not engage in any analysis regarding the plain language of the statute. Instead, without first finding an ambiguity, the panel looked only at the General Assembly's intentions in enacting the legislation. We, however, are not bound by a prior unpublished Superior Court memorandum. **See Coleman v. Wyeth Pharmaceuticals**, **Inc.**, 6 A.3d 502, 522 n.11 (Pa. Super. 2010); **see also Commonwealth v. Swinson**, 626 A.2d 627, 629 (Pa. Super. 1993) ("[A]n unpublished memorandum opinion [] cannot be relied upon nor cited for precedential value.").

dispute that the Department of Health did not prescribe minimum levels of Buprenorphine and Norbuprenorphine. Thus, the test results showing specific quantities of Buprenorphine and Norbuprenorphine found in Schaeffer's bloodstream were properly precluded from trial.[9] Accordingly, we conclude that the trial court did not err as a matter of law in granting Schaeffer's request for suppression.

Order affirmed.

Musmanno, J. joins the memorandum.

Shogan, J. files a dissenting memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 05/10/2019

---

[9] Having determined that Section 1547(c)(4) is a more specific statutory provision than Section 1547(c), we conclude that the Commonwealth's reliance on **Williamson** is misplaced. Our decision, however, does not address whether a report indicating the mere *presence* of Buprenorphine and Norbuprenorphine, without reference to the actual levels found in a defendant's bloodstream, would be admissible at trial. That issue was not argued before the trial court and is not presently before us since the report at issue clearly set forth specific amounts of Buprenorphine and Norbuprenorphine detected in Schaeffer's blood sample.