J-S79019-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ASHLEY MARIE SCHAEFFER | : | No. 485 MDA 2018 |

Appeal from the Order Entered March 7, 2018
In the Court of Common Pleas of Lycoming County Criminal Division at
No(s): CP-41-CR-0000168-2017

BEFORE: SHOGAN, J., OLSON, J., and MUSMANNO, J.

DISSENTING MEMORANDUM BY SHOGAN, J.:        **FILED MAY 10, 2019**

For the reasons that follow, I respectfully dissent from the Majority's conclusion that the results of the blood test must be suppressed.

Under the Pennsylvania Rules of Evidence, all relevant evidence is admissible, except as otherwise provided by law. Pa.R.E. 402. Section 1547 of the Motor Vehicle Code addresses chemical testing to determine the amount of alcohol content of blood or the presence of a controlled substance in a person deemed to have been driving while under the influence of alcohol or a controlled substance. With regard to the admissibility of those test results, Section 1547 provides, in pertinent part, as follows:

> **(c) Test results admissible in evidence. —** In any summary proceeding or criminal proceeding in which the defendant is charged with a violation of section 3802 or any other violation of this title arising out of the same action, the amount of alcohol or controlled substance in the defendant's blood, as shown by chemical testing of the person's breath or blood, which tests were

conducted by qualified persons using approved equipment, shall be admissible in evidence.

* * *

(4) For purposes of blood testing to determine the amount of a Schedule I or nonprescribed Schedule II or III controlled substance or a metabolite of such a substance, **the Department of Health shall prescribe minimum levels of these substances which must be present in a person's blood in order for the test results to be admissible in a prosecution** for a violation of section 1543(b)(1.1), 3802(d)(1), (2) or (3) or 3808(a)(2).

75 Pa.C.S. § 1547(c)(4) (emphasis added).

"The purposes behind [Section 1547(c)] is to outline the necessary regulations and procedures that have been approved in this Commonwealth for chemical test results to be admissible in relevant legal proceedings." ***Commonwealth v. Williamson***, 962 A.2d 1200, 1204 (Pa. Super. 2008). The introductory language of Section 1547(c) indicates that breath and blood tests, which were conducted by a qualified person using approved equipment, shall be admissible in evidence. Section 1547(c)(4) applies to blood tests for particular controlled substances or metabolites and directs that "the Department of Health shall **prescribe** minimum levels of these substances which must be present in a person's blood in order for the test results to be admissible in a prosecution." (emphasis added). The statute does not direct the Department of Health to actually publish those minimum levels, but merely to prescribe the minimum levels.

Regardless, on July 2, 2015, the Department of Health published a notice of the "Minimum Levels of Controlled Substances or Their Metabolites in Blood to Establish Presence of Controlled Substance" in the Pennsylvania Bulletin. The text of the notice, which I conclude is germane to our review, states:

> Under 75 Pa.C.S. § 1547(c)(4) (relating to chemical testing to determine amount of alcohol or controlled substance), as amended by the act of September 30, 2003 (P. L. 120, No. 24), the Department of Health (Department) is **publishing** a notice of the minimum levels of Schedule I, nonprescribed Schedule II and nonprescribed Schedule III controlled substances or their metabolites that must be present in a person's blood for the test results to be admissible in a prosecution for a violation of 75 Pa.C.S. § 1543(b)(1.1), § 3802(d)(1), (2) or (3) or § 3808(a)(2) (relating to driving while operating privilege is suspended or revoked; driving under influence of alcohol or controlled substance; and illegally operating a motor vehicle not equipped with ignition interlock).
>
> Testing for controlled substances in blood is normally a two-step process. The first step involves screening of the blood using a relatively rapid and inexpensive procedure to presumptively determine whether a specimen contains a controlled substance or a metabolite of a controlled substance. The second step utilizes an alternate procedure to confirm the presence of the controlled substance or metabolite that was presumptively detected by the screening procedure. Confirmatory analyses employed to substantiate the presence of a controlled substance or metabolite are also used to determine the concentration of the controlled substance or metabolite. **A limit of quantitation (LOQ) for a controlled substance or metabolite is the lowest concentration that a laboratory can reliably determine. A laboratory's LOQ for each controlled substance or metabolite will depend upon the equipment and procedures the laboratory employs for confirmatory testing.**
>
> Laboratories that operate in this Commonwealth and perform analyses of blood to determine controlled substance

content must be approved by the Department in accordance with 28 Pa. Code § 5.50 (relating to approval to provide special analytical services) and be listed in notices published in the Pennsylvania Bulletin. **The minimum levels listed in this notice were developed by reviewing the LOQs reported by the laboratories approved by the Department to analyze blood for controlled substances or their metabolites.** Laboratories are not required to have LOQs for controlled substances or their metabolites that are equal to or below minimum levels listed. **The levels listed are intended to establish the lowest reportable results admissible in a prosecution.**

**The Department recognizes that testing may be conducted for controlled substances and metabolites not listed in this notice. When testing is necessary, interested parties should contact the laboratory performing the test to inquire as to that laboratory's specific method of testing, the equipment used and any policies or procedures employed by that laboratory to ensure that the test results are valid.** In subsequent notices, the Department will revise, as needed, the minimum levels of controlled substances or metabolites already included in this notice and add new controlled substances or metabolites when warranted.

45 Pa. Bulletin 3638 (emphases added). The above language is followed by a chart setting forth the LOQs for twenty controlled substances and metabolites, divided into the following classes: amphetamines, analgesics, cannabinoids, cocaine, hallucinogens, opiates, and sedatives/hypnotics. 45 Pa. Bulletin 3639.

It is obvious that, for purposes of convenience, the Department of Health published the LOQs for a limited number of the most commonly abused substances. The Department of Health explains that the LOQs listed in the publication "were developed by reviewing the LOQs reported by the

laboratories approved by the Department to analyze blood for controlled substances or their metabolites."  45 Pa. Bulletin 3638.

The Department of Health also "recognizes that testing may be conducted for controlled substances and metabolites not listed" in the published notice.  *Id*.  As the Commonwealth explained at the suppression hearing, "[t]he notice allows for the fact that [the Department of Health] may not be able to supply, or may not have provided a minimum level for all illegal narcotics, because at this point we know [new narcotics] keep – [new narcotics] are continuously popping up, and [the Department of Health] can't logically keep up with that."  N.T., 2/27/18, at 10.

The Department of Health prescribes that, "[w]hen testing is necessary [on narcotics with LOQs which have not been included in the publication], interested parties should contact the laboratory performing the test to inquire as to that laboratory's specific method of testing, the equipment used and any policies or procedures employed by that laboratory to ensure that the test results are valid."  45 Pa. Bulletin 3638.  This direction from the Department of Health is in keeping with the earlier language in the publication explaining that "[a] laboratory's LOQ for each controlled substance or metabolite will depend upon the equipment and procedures the laboratory employs for confirmatory testing."  *Id*.

In addition, the instructions from the Department of Health to "contact the laboratory performing the test" ensures that the method employed for

determining the LOQs for unlisted controlled substances are consistent with the method that determined the LOQs of the twenty listed substances. *Id*. As the Department explains in the publication, "[t]he minimum levels listed in this notice were developed by reviewing the LOQs reported by the laboratories approved by the Department to analyze blood for controlled substances or their metabolites." *Id*. Thus, pursuant to Section 1547(c)(4), the Department of Health has prescribed that the LOQs for each controlled substance or metabolite, whether published or unpublished, are ultimately determined by the same method that relies upon consideration of the equipment and procedures the laboratory employs, and that information is available through contact with the individual laboratory. Hence, the Department of Health has satisfied its statutory requirement. Indeed, our legislature made no mention in the statute of a requirement that the LOQs be published in the Pennsylvania Bulletin. Likewise, the General Assembly did not express that a failure to publish the LOQs act as a bar from admissibility of the test results.

For these reasons, I conclude that the Department of Health has satisfied with requirement set forth under Section 1547(c)(4) to prescribe LOQs for substances that must be present in a person's blood in order for the test results to be admissible in a prosecution. Therefore, the test results in this matter should be admissible.