J-S42009-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| VICTOR BRIDESON | : | |
| | : | |
| Appellant | : | No. 1207 EDA 2020 |

Appeal from the Judgment of Sentence Entered January 17, 2020
In the Court of Common Pleas of Carbon County
Criminal Division at No(s):  CP-13-CR-0000017-2019

BEFORE:  PANELLA, P.J., OLSON, J., and MUSMANNO, J.

MEMORANDUM BY PANELLA, P.J.:                    **FILED OCTOBER 09, 2020**

Appellant, Victor Brideson, appeals from the judgment of sentence entered in the Carbon County Court of Common Pleas on January 17, 2020, sentencing him to an aggregate of six months to five years' imprisonment for convictions of driving under the influence ("DUI") of a controlled substance and three summary offenses[1]. Brideson challenges the weight of the evidence supporting his DUI conviction. We affirm.

The trial court thoroughly set forth the factual and procedural background of this matter as follows:

On the night of August 16, 2018, [Brideson] was stopped in the parking lot of Ametek, Inc. ("Ametek") by Officer Richard Neikham

---

[1] Careless Driving, 75 Pa.C.S.A. § 3714(a); Driving on Right Side of Roadway, 75 Pa.C.S.A. § 3301(a); and Driving on Roadways Laned for Traffic, 75 Pa.C.S.A. § 3309(1).

("Neikam") of the Nesquehoning Police Department for erratic driving. Neikam was first alerted to [Brideson]'s erratic driving through a dispatch from the Carbon County Communications Center. Jennifer Dempsey ("Dempsey"), an off-duty officer with the Mahanoy City Police Department, earlier witnessed [Brideson] driving erratically and reported his vehicle registration and make and model of the vehicle in question to the "Comm. Center." Dempsey then continued to follow [Brideson]'s vehicle until Neikam's arrival, at which point Dempsey followed both [Brideson]'s vehicle and Neikam into the Ametek parking lot.

Dempsey had followed behind [Brideson] from the Dunkin Donuts in Lehighton, through Jim Thorpe, and to Ametek in Nesquehoning, a distance of approximately 7.5 miles. At trial, Dempsey described what she observed as she was driving behind [Brideson]. She described how [Brideson] drove at widely varying speeds - stretches of very slow speeds and then stretches of very high speeds, multiple incidences of [Brideson]'s vehicle crossing both the fog line and double yellow line, as well as a number of near accidents caused by [Brideson]'s erratic driving. Dempsey testified that she observed at least three incidences where [Brideson]'s vehicle nearly collided with vehicles in the opposite lane, causing those vehicles to cross over the fog lines in their lane of traffic to avoid hitting [Brideson]. After responding to the dispatch, Neikam followed [Brideson] for approximately two-tenths of a mile, during which time he also observed erratic driving of the same type described by Dempsey, causing him to stop [Brideson] after [Brideson] turned into the Ametek parking lot.

After activating his overhead lights, Neikham approached [Brideson]'s vehicle and spoke with [Brideson]. Neikham reported that [Brideson] appeared disheveled, had constricted pupils, and described [Brideson]'s behavior as being upset and argumentative. The appearance of [Brideson], his behavior, and his constricted pupils led Neikham to believe that [Brideson] may have been under the influence of an illegal substance. Neikham then had [Brideson] perform two separate field sobriety tests, the walk-and-turn and one-legged stand tests. During the walk-and-turn test, [Brideson] took the wrong number of steps, missed heel to toe placement on several occasions, and did not count out his steps aloud as instructed. [Brideson] also failed to keep his arms lowered at his side during this test, indicating a loss of balance. During the one-legged stand test, [Brideson] again failed to keep his arms at his side as instructed, swayed and hopped around,

and could not keep his foot off the ground. Following [Brideson]'s performance of these tests, Neikham placed [Brideson] under arrest for suspicion of driving under the influence of a controlled substance and other charges, and transported him to the police station. At the police station, [Brideson] agreed to a portable breath test (PBT), which indicated the absence of alcohol. Neikham requested a Drug Recognition Expert (DRE) to assess whether [Brideson] was under the influence of a controlled substance. Pennsylvania State Trooper Michael Sofranko ("Sofranko") was the DRE who responded to conduct this evaluation. After meeting with [Brideson] and explaining that the evaluation was voluntary, [Brideson] refused to consent to the examination. [Brideson] also refused to consent to a blood draw. Sofranko testified that, even though his interaction with [Brideson] was brief, he did witness that [Brideson]'s eyes were bloodshot and glassy, and his pupils constricted. Additionally, Sofranko testified to his qualifications, and the Court recognized him as a drug recognition expert. As an expert witness, Sofranko testified that constriction of the pupils is indicative of controlled substance use.

A jury trial was held on June 4, 2019, wherein the Commonwealth established the previously laid-out facts. [Brideson] testified in his defense that his impairment on the night in question was the result of personal difficulties he was having at the time and not due to a controlled substance. [Brideson] testified that a few days before the incident he was evicted from his apartment and had become homeless. Additionally, he was working as a temporary employee at Ametek, Inc. and was trying to turn that employment into a permanent position.[] At the time, [Brideson] was living in his van, and his girlfriend, Terry Stettler ("Stettler"), who had previously resided with him prior to being evicted, had been living with a friend. [Brideson] testified that because of his homelessness, his concern for Stettler, and his need to turn his temporary employment into permanent employment, he had not slept for three days prior to the incident. Furthermore, [Brideson] testified to a problem with his eyes. He explained that he was born cross-eyed, and that as a child he was hit by a car, causing damage to his eye. [Brideson] described this damage as amounting to a "lazy eye, moving back and forth."

[Brideson] further testified that his crossing the center line while driving and nearly striking several vehicles was done intentionally to alert the vehicle behind him (i.e., Dempsey) that she was

driving too close. He claimed that he was trying to "move the vehicle so that the lights would hit my mirror and would reflect back on the vehicle behind me letting them know to back off; you're too close." [Brideson] claimed to have learned this strategy from his high school driving instructor. Moreover, [Brideson] testified that his bouts of slow driving were due to cautious observation for construction zones and fear of deer and other wildlife crossing the road.

[Brideson] claimed his impairment on the night of the incident was due to his stress and lack of sleep, as well as being cross-eyed, and not due to a controlled substance. In addition, Stettler testified that she had spent the day of the incident with [Brideson] and had not seen [Brideson] take any drug or controlled substance, but did notice that [Brideson] was stressed and tired, and even suggested that [Brideson] not go into work that night.

Trial Court Opinion, 6/2/2020, at 1-5 (citations to the record omitted).

On June 4, 2019, the jury convicted Brideson of all charges filed against him. On January 17, 2020, he was sentenced to six months to five years' imprisonment. Brideson filed a timely post-sentence motion in which he argued the verdict was against the weight of the evidence. The trial court denied the motion. This timely appeal followed.

On appeal, Brideson again argues the jury's verdict was against the weight of the evidence. A challenge to the weight of the evidence "concedes that the evidence is sufficient to sustain the verdict, but seeks a new trial on the ground that the evidence was so one-sided or so weighted in favor of acquittal that a guilty verdict shocks one's sense of justice." *Commonwealth v. Orie*, 88 A.3d 983, 1015 (Pa. Super. 2014) (citation omitted). A verdict is said to be contrary to the evidence such that it shocks one's sense of justice when "the figure of Justice totters on her pedestal," or when "the jury's

verdict, at the time of its rendition, causes the trial judge to lose his breath, temporarily, and causes him to almost fall from the bench, then it is truly shocking to the judicial conscience." ***Commonwealth v. Davidson***, 860 A.2d 575, 581 (Pa. Super. 2004) (citations omitted).

> When the challenge to the weight of the evidence is predicated on the credibility of trial testimony, our review of the trial court's decision is extremely limited. Generally, unless the evidence is so unreliable and/or contradictory as to make any verdict based thereon pure conjecture, these types of claims are not cognizable on appellate review. Moreover, where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

***Commonwealth v. Gibbs***, 981 A.2d 274, 282 (Pa. Super. 2009) (internal quotes and citations omitted).

Brideson challenges the weight of the evidence supporting his conviction under 75 Pa.C.S.A. § 3802(d)(2). Pursuant to that statute:

> (d) Controlled substances—An individual may not drive, operate or be in actual physical control of the movement of a vehicle under any of the following circumstances:
>
> * * *
>
> > (2) The individual is under the influence of a drug or combination of drugs to a degree which impairs the individual's ability to safely drive, operate or be in actual physical control of the movement of the vehicle.

75 Pa.C.S.A. § 3802(d)(2). We have emphasized that "Section 3802(d)(2) does *not* require that any amount or specific quantity of the drug be proven in order to successfully prosecute under that section." ***Commonwealth v.***

- 5 -

*Williamson*, 962 A.2d 1200, 1204 (Pa. Super. 2008) (emphasis in original). Rather, the Commonwealth must simply prove that, while driving or operating a vehicle, the accused was under the influence of a drug to a degree that impaired his or her ability to safely drive that vehicle. *See id.*

We conclude that there is no merit to Brideson's sole issue on appeal. Brideson argues that the Commonwealth did not present any evidence capable of identifying a controlled substance Brideson was impaired by. Further, he claims that his own testimony and that of his girlfriend adequately explained his erratic driving and other visible symptoms of impairment.

While the evidence presented at trial certainly was missing any identification of a controlled substance in Brideson's blood, it is also true that Brideson refused to submit to an examination by the DRE. Further, while the jury could have credited Brideson's evidence explaining his apparent impairment, it clearly did not do so. The trial court reviewed this testimony and concluded that it was "not so overwhelmingly supportive of [Brideson's] innocence as to cast doubt on whether justice was served." Trial Court Opinion, 6/2/2020, at 8.

After reviewing the transcript, we cannot conclude the court's reasoning was an abuse of its discretion. As such, Brideson's sole claim on appeal merits no relief.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/9/20