J-S06009-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JULIA ROSEMARIE HARRINGTON | : | |
| | : | |
| Appellant | : | No. 1841 EDA 2019 |

Appeal from the Judgment of Sentence Entered May 24, 2019
In the Court of Common Pleas of Monroe County Criminal Division at
No(s): CP-45-CR-0001720-2018

BEFORE:  LAZARUS, J., McLAUGHLIN, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY LAZARUS, J.:                    Filed: March 16, 2020

Julia Rosemarie Harrington appeals from the judgment of sentence, entered in the Court of Common Pleas of Monroe County, following her convictions for driving under the influence (DUI)—controlled substance[1] and the summary offense of careless driving.[2]  Upon careful review, we affirm.

The trial court summarized the relevant facts as follows:

Trooper Michael Wychock of the Pennsylvania State Police was on patrol on April 14, 2018.  He had recently graduated from the State Police Academy and this was his first DUI investigation as a state trooper.  He was not trained as a drug recognition expert. He was a military police officer for six years before becoming a state trooper and made approximately four DUI-related stops during that time.

---

[1] 75 Pa.C.S.A. § 3802(d)(2).

[2] 75 Pa.C.S.A. § 3714(a).

Trooper Wychock and Trooper Bruce Balliet responded to a report of a disabled vehicle on Route 380 in Monroe County on April 14, 2018 at approximately [1:34 a.m.]. A passing truck driver radioed that he thought he saw a vehicle off the side of the Route 380 northbound lane. When the troopers arrived on the scene, they observed that the guardrail had been pushed up in the air and [Harrington's] vehicle was approximately 50 feet down the right embankment. It had rotated 90 degrees and had come to rest facing west. The weather at the time was clear and the fog line on the roadway was visible.

Trooper Wychock met [Harrington] on the embankment. Her appearance was disheveled and she was speaking "slow and sluggish." She wasn't making sense when answering questions. Her eyes were bloodshot and glassy. Her speech was "very lethargic" and she seemed confused. She told the trooper that she had lost control of her vehicle. She stated she had been in the middle lane, but at that point on Route I-380N, there are only two lanes. She said she was getting off at Exit 20, but that exit is in the Scranton area. The crash occurred at Mile Marker 8.1 where there was no exit nearby.

Trooper Wychock conducted the HGN [(horizontal gaze nystagmus)], walk[-]and[-]turn, and one-leg[-]stand field sobriety tests upon [Harrington]. During the walk[-]and[-]turn test [Harrington] was instructed to walk nine steps forward in a straight line, one foot in front of the other heel to toe, then turn around and walk nine step back. [Harrington] missed heel to toe on both sets of nine; in the one-leg[-]stand test, [Harrington] swayed, put her foot down and raised her hand multiple times. The trooper concluded that [Harrington] was operating her vehicle while under the influence of a controlled substance and he placed her under arrest. He took her to the Monroe County Correctional Facility where she was read the DL[-]28B form and was asked to give a sample of her blood, which she refused. There was no evidence of alcohol use and no drug paraphernalia was found. [Harrington] did not admit to using controlled substances.

Trooper Balliet testified that he had been a Pennsylvania State Trooper for five years and had made over 100 DUI arrests since 2014. He was ARIDE [(Advanced Roadside Impaired Driving Enforcement)] certified. He was supervising Trooper Wychock because Wychock had recently graduated from the Pennsylvania State Police Academy. Trooper Balliet conducted a field sobriety

- 2 -

test upon [Harrington,] during which she raised her chin, closed her eyes and was asked to estimate the passage of thirty seconds. [Harrington] failed the test because she did not accurately estimate the passage of thirty seconds on two tries. To pass the test[,] the subject must announce the passage of thirty seconds and be within five seconds of the 30[-]second period. Trooper Balliet observed Trooper Wychock administer the other field sobriety tests, and saw clues of impairment. He concluded that Harrington was under the influence of a controlled substance, primarily a depressant.

Trial Court Opinion, 8/13/19 at 2-4.

The court found Harrington guilty of DUI and careless driving on March 4, 2019. Harrington filed post-trial motions, which were denied on April 26, 2019. On May 24, 2019, the court sentenced Harrington to a term of imprisonment of 72 hours to six months for DUI, plus a $1,000 fine, and to a $25 fine for careless driving. Harrington timely filed a notice of appeal and a court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Harrington raises the following claims:

(1) Did the court abuse its discretion by not setting aside the verdict and granting a new trial after the Commonwealth failed to show any evidence that [Harrington] was under the influence of controlled substances after having an accident in which she went off the road, under a guardrail and down an embankment where [Harrington]'s condition was attributable to the accident?

(2) Did the court abuse its discretion by not setting aside the verdict as to driving under the influence of a controlled substance, in that there was insufficient evidence to convict [Harrington] of that crime, in that the Commonwealth failed to prove an element of the crime that [Harrington] was under the influence of a controlled substance?

(3) Did the court abuse its discretion by not setting aside the verdict as to driving under the influence of a controlled

- 3 -

substance, in that it was against the weight of the evidence to convict [Harrington] of the crime, in that the Commonwealth failed to prove an element of the crime that [Harrington] was under the influence of a controlled substance?

(4) Did the court abuse its discretion by not setting aside the verdict and granting a new trial after allowing the Commonwealth to argue that [Harrington]'s refusal to have the BAC blood test was consciousness of guilt and could be considered evidence of guilt[,] impermissibly burden[ing] [Harrington]'s constitutional privilege against self-incrimination?

(5) Did the court abuse its discretion by not setting aside the verdict and granting a new trial after allowing the trooper to opine that [Harrington] was under the influence of an unknown substance when the layperson opinion of an officer is not admissible in a controlled substance DUI case?

Brief of Appellant, at 6-7 (reordered for clarity).

Harrington's first two issues challenge the sufficiency of the evidence and we address them together. In reviewing a challenge to the sufficiency of the evidence, this Court applies the following well-established standard:

We must determine whether the evidence admitted at trial, and all reasonable inferences drawn therefrom, when viewed in a light most favorable to the Commonwealth as verdict winner, support the conviction beyond a reasonable doubt. Where there is sufficient evidence to enable the trier of fact to find every element of the crime has been established beyond a reasonable doubt, the sufficiency of the evidence claim must fail.

The evidence established at trial need not preclude every possibility of innocence and the fact-finder is free to believe all, part, or none of the evidence presented. It is not within the province of this Court to re-weigh the evidence and substitute our judgment for that of the fact-finder. The Commonwealth's burden may be met by wholly circumstantial evidence and any doubt about the defendant's guilt is to be resolved by the fact-finder unless the evidence is so weak and inconclusive that, as a matter

- 4 -

of law, no probability of fact can be drawn from the combined circumstances.

***Commonwealth v. Rodriguez***, 141 A.3d 523, 525 (Pa. Super. 2016). "Because evidentiary sufficiency is a matter of law, our standard of review is *de novo* and our scope of review is plenary." ***Commonwealth v. Brooker***, 103 A.3d 325, 330 (Pa. Super. 2014).

Harrington claims that the Commonwealth presented insufficient evidence to support her conviction where the Commonwealth failed to show that Harrington had controlled substances in her system at the time of the accident.  Brief of Appellant, at 10, 20.

Harrington was convicted under the DUI statute, which provides, in relevant part:

> **§ 3802.  Driving under influence of alcohol or controlled substance.**
>
> * * *
>
> **(d)  Controlled substances.—**An individual may not drive, operate or be in actual physical control of the movement of a vehicle under any of the following circumstances:
>
> (1)  There is in the individual's blood any amount of a:
>
> (i)   Schedule I controlled substance . . .
> (ii)  Schedule II or Schedule III controlled substance . . . or
> (iii) metabolite of a substance under subparagraph (i) or (ii).
>
> (2)  The individual is under the influence of a drug or combination of drugs to a degree which impairs the individual's ability to safely drive, operate or be in actual physical control of the movement of the vehicle.

75 Pa.C.S.A. § 3802(d).

Specifically, Harrington was convicted under subsection 3802(d)(2). The plain language of the DUI statute does not require the Commonwealth to prove Harrington had controlled substances in her system for purposes of that subsection. *See id.* Rather, to support a conviction under subsection 3802(d)(2), "the Commonwealth only had to prove that [Harrington] [drove while she] was under the influence of a drug to a degree that impair[ed] [her] ability to safely drive or operate a vehicle." *Commonwealth v. Williamson*, 962 A.2d 1200, 1204 (Pa. Super. 2008); *see also* 35 P.S. § 780-102 (definition of drug includes "substances (other than food) intended to affect the structure or any function of the human body or other animal body"); *Commonwealth v. Roser*, 914 A.2d 447, 455 (Pa. Super. 2006) (gasoline and "bug and tar remover" qualify as drugs under DUI statute).

At the outset, the trial court determined, and Harrington does not dispute, that Harrington was in actual physical control of her vehicle at the time she drove off Route 380 and down an embankment; this element is not before us. To support Harrington's conviction, the Commonwealth had to prove that, at the time she was driving, Harrington was under the influence of a drug or a combination of drugs that impaired her ability to drive safely. 75 Pa.C.S.A. § 3802(d)(2).

Harrington drove her vehicle off Route 380, through a guardrail, and down an embankment when "the weather at the time was clear and the fog line on the roadway was visible." N.T. Trial, 3/4/19, at 7-8. Upon arriving at

the scene, Troopers Wychock and Balliet observed that Harrington presented obvious signs of impairment: Harrington was swaying, looked disheveled, and had bloodshot and glassy eyes; she spoke slowly, sluggishly, and lethargically; she appeared confused and gave nonsensical answers to simple questions; she stated she was in the "middle lane" of a two-lane highway, and that she attempted to get off at "Exit 20," located in another county, when no exit was nearby; two state troopers, including Trooper Balliet who is ARIDE certified, administered field sobriety tests on Harrington and concluded, based on her performance, that she was under the influence of a controlled substance. *Id.* at 8-12, 21-24. This evidence supports a reasonable inference that Harrington was impaired by controlled substances to a degree that rendered her incapable of safe driving. *See Commonwealth v. Gause*, 164 A.3d 532, 539-42 ("staggering, stumbling, glassy or bloodshot eyes, and slurred speech" are signs of intoxication from a controlled substance; "[e]vidence that the driver was not in control of [herself], such as failing to pass a field sobriety test, may establish that the driver was under the influence . . . to a degree which rendered [her] incapable of safe driving"). Accordingly, the evidence presented at trial and all reasonable inferences therefrom, viewed in a light most favorable to the Commonwealth as verdict winner, was sufficient to support Harrington's conviction. *Rodriguez*, *supra*.

Next, Harrington claims the court abused its discretion in denying her motion for a new trial where the verdict was against the weight of the

evidence. Specifically, Harrington avers that "field sobriety tests alone are not enough [] to show beyond a reasonable doubt that she was driving under the influence of a controlled substance." Brief of Appellant, at 23.

We review the trial court's exercise of discretion in ruling on the weight claim, not the underlying question of whether the verdict was against the weight of the evidence. *Commonwealth v. Champney*, 832 A.2d 403, 408 (Pa. 2003). It is not our role, as a reviewing court, to reweigh the evidence and substitute our judgment for that of the fact-finder. *Commonwealth v. Mitchell*, 902 A.2d 430, 449 (Pa. 2006). "The essence of appellate review for a weight claim [lies] in ensuring that the trial court's decision has record support. Where the record adequately supports the trial court, the trial court has acted within the limits of its discretion." *Commonwealth v. Clay*, 64 A.3d 1049, 1054 (Pa. 2013) (citations and quotations omitted). To warrant a new trial on weight of the evidence grounds, "the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the court." *Commonwealth v. Sullivan*, 820 A.2d 795, 806 (Pa. Super. 2003).

Here, the record supports the trial court's conclusion that the verdict was not against the weight of the evidence. Our review shows that the evidence was not tenuous, vague, or uncertain, and that the verdict was not so contrary to the evidence as to shock the court's conscience. Two Pennsylvania State Troopers, one of whom was ARIDE-certified, testified that Harrington was not capable of safely operating her vehicle due to ingesting

controlled substances, after they credibly testified that Harrington drove her car off the road, presented obvious signs of intoxication, failed a number of field sobriety tests, and refused to provide a blood sample upon request. N.T. Trial, 3/4/19, at 4-14, 20-25. We conclude, therefore, that the court did not abuse its discretion in denying Harrington's motion for a new trial based on her weight of the evidence challenge. **Champney**, **supra**.

Harrington next claims the trial court abused its discretion, in violation of her constitutional right against self-incrimination, by not granting a new trial where the Commonwealth argued that her refusal to submit to a blood test was indicative of her guilty conscience. Brief of Appellant, at 13-14.

Pennsylvania statutory law provides for the introduction of this evidence in DUI cases. Specifically, 75 Pa.C.S.A. § 1547(e) provides that:

> In any summary proceeding or criminal proceeding in which the defendant is charged with violating section 3802 or any other violation of this title arising out of the same action**, the fact that the defendant refused to submit to chemical testing as required by subsection (a) may be introduced in evidence along with other testimony concerning the circumstances of the refusal**. No presumptions shall arise from this evidence but it may be considered along with other factors concerning the charge.

75 Pa.C.S.A. § 1547(e) (emphasis added).

Moreover, the United States Supreme Court has upheld the introduction of refusal evidence over Fifth Amendment challenges. **See South Dakota v. Neville**, 459 U.S. 553, 554 (1983) ("admission into evidence of a defendant's refusal to submit to [a blood-alcohol test] does not offend the right against

self-incrimination").[3]  The Supreme Court further clarified that there is no Fifth Amendment violation where a prosecutor argues that a defendant's refusal to take a blood-alcohol test is evidence of their guilt.  *Id.*[4]

Finally, Harrington claims that the trial court abused its discretion in denying her motion for a new trial after permitting Trooper Wychock to give lay opinion testimony regarding her ability to drive safely and whether she was under the influence of drugs or alcohol.  Brief of Appellant, at 15-17. Citing a dissenting opinion, Harrington argues that lay opinion testimony is inadmissible to prove intoxication in a DUI case, and that a qualified expert is required to establish the connection between any alleged substances she ingested and the symptoms displayed in order to convict her of DUI.  Brief of Appellant, at 16, citing **Commonwealth v. Yedinak**, 676 A.2d 1217, 1222 (Pa. Super. 1996) (Beck, J., dissenting).

---

[3] **See also Birchfield v. North Dakota**, 136 S.Ct. 2160, 2185 (2016) ("Our prior opinions have referred approvingly to the general concept of implied-consent laws that impose civil penalties and *evidentiary consequences* on motorists who refuse to comply.") (emphasis added).

[4] In **Griffin v. California**, 380 U.S. 609, 615 (1965), the Supreme Court held that the Fifth and Fourteenth Amendments forbid prosecutors from commenting that an accused's silence is evidence of their guilt.  The Court explained subsequently in **Neville**, however, that, "[u]nlike the defendant's situation in **Griffin**, a person suspected of drunk driving has no constitutional right to refuse to take a blood-alcohol test.  The specific rule of **Griffin** is thus inapplicable."  459 U.S. 553, 571 n.10.

Harrington did not raise any objection at trial to Trooper Wychock's lay opinion testimony; instead, she raises this issue for the first time on appeal. Consequently, this issue is waived. Pa.R.A.P. 302(a); ***Commonwealth v. McGriff***, 160 A.3d 863, 866 (Pa. Super. 2017) ("[I]t is well-settled that a party must make a timely and specific objection at trial, and the failure to do so results in waiver of that issue on appeal.").[5]

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/16/20

---

[5] We note, however, that contrary to Harrington's assertion, our Supreme Court has specifically "decline[d] to read into subsection 3802(d)(2) a mandatory requirement for expert testimony to establish that the defendant's inability to drive safely was caused by ingestion of a drug, even if it is a prescription drug, or drug combination." ***Commonwealth v. Griffith***, 32 A.3d 1231, 1238 (Pa. 2011).