J-S42027-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CEDRIC GALETTE | : | |
| | : | |
| Appellant | : | No. 862 EDA 2019 |

Appeal from the Judgment of Sentence Entered February 28, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0005392-2018

BEFORE: PANELLA, P.J., OLSON, J., and MUSMANNO, J.

MEMORANDUM BY OLSON, J.: Filed: December 17, 2020

Appellant, Cedric Galette, appeals from the February 28, 2019 judgment of sentence imposing three days' incarceration, six months' probation, and a suspension of his driver's license for twelve months after the trial court found Appellant guilty of driving under the influence of a controlled substance ("DUI-controlled substance").[1] We affirm.

The trial court summarized the factual history as follows:

[O]n January 18, 2017, [Officer Patrick Dooley] observed [Appellant] traveling at a high rate of speed westbound in a black Ford Escape while [Officer Dooley] was traveling eastbound on

---

[1] 75 Pa.C.S.A. § 3802(d)(2). Appellant's sentence of six months' probation was to run consecutive to his sentence of three days' incarceration. Appellant was also ordered to attend Alcohol Highway Safety School and receive a drug and alcohol assessment and treatment at a Greater Philadelphia Health Action facility.

[Rhawn Street as he was approaching Verree Road,[2] in Philadelphia, Pennsylvania]. Officer [] Dooley stated, "[Appellant's] vehicle was traveling at a high rate of speed. The vehicle [maneuvered from] the left lane [of travel and] went into the right shoulder bike lane [on the roadway]. [While driving, Appellant] passed approximately six vehicles. [Appellant] timed the [traffic signal and drove] through the intersection, at which time [Officer Dooley] made a U-turn and activated [his] lights and sirens [on his police cruiser in order] to pull [Appellant] over." After Officer Dooley activated his lights and sirens, [Appellant] continued [driving onto] "Pine [R]oad, crossed Pine Road, and made a sharp U-turn into the Dunkin Donuts parking lot." [Appellant] then exited the driver's side of the vehicle and moved quickly to the Dunkin Donuts [building, whereupon] Officer [Dooley] stopped him and asked [Appellant] what was going on. [Appellant] stated that someone was having a medical emergency. Officer Dooley then went to the passenger side of [Appellant's] vehicle to see what the medical emergency was and called for the medics. However, once the medics arrived, the passenger, who identified himself as [Appellant's] son, refused medical [assistance].

Trial Court Opinion, 12/18/19, at 1-2 (record citations, extraneous capitalization, and original brackets omitted).

On August 3, 2018, Appellant was charged with the aforementioned crime.[3] At the conclusion of a bench trial on November 29, 2018, the trial

_____

[2] The trial court stated that Officer Dooley was traveling eastbound on "Verree Avenue." A review of the notes of testimony demonstrates that Officer Dooley was traveling eastbound on Rhawn Street and that Appellant was traveling westbound on Rhawn Street. N.T., 11/29/18, at 4.

[3] Initially, Appellant was charged with the aforementioned crime on January 19, 2017, and appeared before the Philadelphia Municipal Court. The municipal court found Appellant guilty of DUI-controlled substance on April 12, 2018. Appellant was sentenced, *inter alia*, to three days' to six months' incarceration with immediate parole upon his serving the minimum sentence of three days. Appellant filed a notice of appeal with the Court of Common

court found Appellant guilty of DUI-controlled substance. On February 28, 2019, the trial court sentenced Appellant to three days' incarceration in a county facility, as well as a maximum of six months' probation to run consecutive to Appellant's incarceration. The trial court also suspended Appellant's driver's license for twelve months, ordered Appellant to attend Alcohol Highway Safety School, and ordered Appellant to receive a drug and alcohol assessment and treatment at a Greater Philadelphia Health Action facility. On March 7, 2019, Appellant filed a post-sentence motion, which the trial court subsequently denied. This appeal followed.[4]

Appellant raises the following issues for our review:

1. Was not the evidence insufficient to support the verdict, as the evidence did not support the conclusion that Appellant was driving under the influence of a controlled substance, or that his ability to drive was impaired where no drugs or paraphernalia were found on Appellant's person or in his vehicle, no chemical testing was introduced, no standardized field sobriety tests were conducted, no expert testimony was elicited regarding [phencyclidine ("PCP")] and the ability to drive and the traffic violations committed by Appellant were consistent with a response to an emergency situation rather than the actions of an impaired driver, especially as there was no collision and no swerving?

2. Was not the evidence presented by the Commonwealth so contradictory as to be insufficient to support the verdict of guilt where the Commonwealth presented two different versions of what Appellant may have been under the influence of, and inconsistent versions of the *indicia* of

_____

Pleas of Philadelphia County where a new information was filed against Appellant charging him with DUI-controlled substance.

[4] Both Appellant and the trial court complied with Pa.R.A.P. 1925.

impairment, all without presenting any expert evidence on his ability to drive, and thus was so unreliable that any finding, and therefore the verdict of guilt, must have been based on surmise and conjecture, and thus insufficient as a matter of law pursuant to **Commonwealth v. Karkaria**, 625 A.2d 1167 (Pa. 1993)?

3. Even were it to be determined that there is sufficient evidence to support the verdict, would not such a verdict be so contrary to the weight of the evidence as to shock one's sense of justice, where the trial testimony was vague, inconsistent and incredible and should not a new trial have been granted in the interests of justice so that right could prevail, as the jury's verdict,[5] based upon such testimony, was speculative and conjectural?

Appellant's Brief at 5-6.

Appellant's first two issues, in sum, challenge the sufficiency of the evidence to support his conviction, for which our standard of review and scope of review are well-settled.

The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proof or proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test,

_____

[5] Appellant was convicted by the trial court at the conclusion of a bench trial and waived his right to a trial-by-jury.

the entire record must be evaluated and all the evidence actually received must be considered.  Finally, the trier[-]of[-]fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part[,] or none of the evidence.

*Commonwealth v. Pappas*, 845 A.2d 829, 835-836 (Pa. Super. 2004) (citation omitted), *appeal denied*, 862 A.2d 1254 (Pa. 2004); *see also Commonwealth v. Brown*, 52 A.3d 1139, 1163 (Pa. 2012) (stating, that in reviewing a claim of insufficient evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, **any** rational trier[-]of[-]fact could have found the essential elements of the crime beyond a reasonable doubt" (emphasis in original)).

> [T]he [trier-of-fact's] individualized assessment of the credibility of the trial evidence is, as a general principle, not to be questioned by an appellate court as part of its review, even if the evidence is conflicting.  [C]ourts presume the [trier-of-fact] resolved evidentiary disputes reasonably so long as sufficient evidence supports the verdict.  [M]ere inconsistency and conflicts in witnesses testimony, by itself, will not furnish a basis for an appellate court to reverse a conviction [] on the grounds of evidentiary insufficiency.

*Brown*, 52 A.3d at 1165 (citations omitted).  Rather, the trier-of-fact's resolution will only be disturbed "in those exceptional instances [] where the evidence is so patently unreliable that the [trier-of-fact] was forced to engage in surmise and conjecture in arriving at a verdict based upon that evidence." *Id.*, *citing Commonwealth v. Karkaria*, 625 A.2d 1167, 1170 (Pa. 1993). When a witness's in-court testimony is inconsistent with a prior statement and the veracity of that inconsistency is tested on cross-examination, the

testimony may be "sufficient evidence upon which a criminal conviction may properly rest" because the trier-of-fact can reasonably credit the in-court testimony over the prior statements. **Brown**, 52 A.3d at 1168. "[I]t is the [trier-of-fact's] ability to make in-person observations of the witness at the time of trial, as he or she explains the reasons for the prior statement, which is most crucial to its assessment of the witness's credibility."[6] **Id.** at 1169. To preserve a sufficiency claim, the appellant's Rule 1925(b) statement must specify the element or elements upon which the evidence was insufficient. **Commonwealth v. Williams**, 959 A.2d 1252, 1257 (Pa. Super. 2008).

Section 3802(d)(2) of the Pennsylvania Vehicle Code, in pertinent part, states,

> **(d) Controlled substances.**--An individual may not drive, operate or be in actual physical control of the movement of a vehicle under any of the following circumstances:
>
> . . .
>
> (2) The individual is under the influence of a drug or combination of drugs to a degree which impairs the individual's ability to safely drive, operate or be in actual physical control of the movement of the vehicle.

---

[6] "[I]t is the 'great engine of cross[-]examination' which furnishes the best method by which the witness's motives for changing his or her story, from that given previously, may be fully and thoroughly explored, and, correspondingly, it is the best means to furnish the [trier-of-fact] with a sound basis by which it may discern which of the two tales told by the witness is worthy of belief." **Brown**, 52 A.3d at 1169 (citation omitted).

75 Pa.C.S.A. § 3802(d)(2). In order to convict a defendant under Section 3802(d)(2), the Commonwealth must demonstrate "that [the defendant] was under the influence of a drug to a degree that impairs his or her ability to safely drive or operate a vehicle." *Commonwealth v. Williamson*, 962 A.2d 1200, 1204 (Pa. Super. 2008) (citation and original quotation marks omitted), *appeal denied*, 980 A.2d 608 (Pa. 2009). Section 3802(d)(2) "does not require proof of a specific amount of a drug in the driver's system. It requires only proof that the driver was under the influence of a drug or combination of drugs to a degree that the ability to drive is impaired." *Commonwealth v. Tarrach*, 42 A.3d 341, 345 (Pa. Super. 2012), *citing* *Williamson*, 962 A.2d at 1204 and *Commonwealth v. Griffith*, 32 A.2d 1231, 1238 (Pa. 2011). "[E]xpert testimony is not necessary to establish impairment [due to a controlled substance] under [Section] 3802(d)(2) where there exists other independent evidence of impairment." *Commonwealth v. Gause*, 164 A.3d 532, 538 (Pa. Super. 2017), *appeal denied*, 173 A.3d 267 (Pa. 2017). A "lay witnesses may testify to someone's readily observable physical condition or appearance that does not require medical training." *Gause*, 164 A.3d at 538 (citation omitted).

Here, Appellant argues,

> The evidence was insufficient to support the verdict, as it failed to validate the conclusion that Appellant was under the influence of a controlled substance, or that his ability to drive was impaired. No drugs or paraphernalia were found on Appellant's person or in his vehicle; no chemical testing was introduced; no standardized field sobriety tests were conducted; no expert testimony was elicited regarding PCP and the ability to drive; and the traffic

violations committed by Appellant were consistent with a response to an emergency situation rather than the actions of an impaired driver, especially as there was no collision and no swerving.

Appellant's Brief at 14. "Appellant denies that he drove while impaired, rather, he attributes the traffic violations as a response to an emergency situation[.]" *Id.* at 16.

The trial court summarized the evidence presented at trial as follows:

[The] Commonwealth asked Officer Dooley how many blocks were between Verree [Road] and Pine [Road], and Officer [Dooley] responded six to seven blocks. [The] Commonwealth then asked[,] at any point did [Appellant] pull over; Officer [Dooley] responded in the negative. [The] Commonwealth then asked[,] at any point did [Appellant] stop his vehicle, and Officer Dooley said[, Appellant] stopped [his vehicle] when he made the U-tum into the Dunkin Donuts parking lot. [The] Commonwealth asked[, whether Appellant] used a [turn-]signal, and Officer [Dooley] stated, "no, he did not." [The] Commonwealth then asked Officer Dooley[, did] he make any observations about [Appellant] when he stopped him [as he attempted to enter] the Dunkin Donuts; Officer Dooley responded,

> I observed [that Appellant's] coat was inside out. The pocket[,] which goes to the inside of the coat[,] was outside. His shirt was half tucked in and half untucked. I believe his zipper, his fly, was open. He had a glaze over [his] face. His eyes were glassy, pinpoint. I [asked] him what was going on. His speech was slow. He had to repeat himself multiple times. I couldn't understand what he was saying. His words were garbled. He had that thousand-yard stare. He was looking at me, but as if I wasn't there. He was looking through me.

Officer Dooley also testified that at the time of the interaction, he thought that he smelled a strong odor of alcohol, but after receiving [additional] training, he believes it was PCP. [The] Commonwealth then [asked] Officer Dooley, based on his training after the incident, how certain [was] he that [Appellant] was under the influence of PCP. Officer Dooley stated, "fairly sure. I mean, I'm almost a hundred percent positive that it wasn't

alcohol, because of the training and the different smells -- at the time I thought it was alcohol, I wasn't sure, but I believed it to be. Going through the [subsequent] training,[7] I realized that, hey, that wasn't alcohol I was smelling, it was PCP." [The] Commonwealth then asked[,] at the time of the incident [had] he ever received training in identifying PCP, Officer Dooley stated, "no." Officer Dooley testified [that] within his nine to ten years as a police officer, he [had] come into contact with individuals who were under the influence of a control substance. [The] Commonwealth asked, "and based on your experience, did you come to form an opinion concerning this [Appellant] on that night." Officer Dooley responded, "On that night and that date, I believed from his erratic driving and his appearance, I believed him to be under the influence of something, and he was unable to operate a vehicle." [The] Commonwealth inquired whether Officer Dooley told the district attorney that [Appellant] was under the influence of PCP and not alcohol. Officer Dooley responded, "I did inform the district attorney that I believed it was PCP and not alcohol. It wasn't until after I arrested him that I believed it was PCP[.]" The [trial] court then asked Officer Dooley if he formed an opinion after he saw [Appellant.] Officer Dooley responded, "When I stopped him, all of his facial movement, [his] glaze[d-]over [stare], his speech, I thought he was impaired." The [trial] court then asked, "You felt that he couldn't drive a car safely?["] Officer Dooley responded, "I felt that he couldn't."

After hearing testimony from Officer Dooley, Officer Daniel Shead [] testified that on January 18, 2017, he was [on duty] at the police detention unit[. The] Commonwealth asked whether Officer Shead made any observations when he saw [Appellant]. Officer Shead stated that [Appellant] had "repetitive speech, he had lightly glassy eyes, and he had slightly slow movements." The [trial] court then asked Officer Shead, did [Appellant] seem impaired to him. Officer Shead responded, "He did show slight signs of impairment. I mean, there's many degrees of impairment that I see on a pretty steady basis." The [trial] court then asked Officer Shead[] how many cases he [was involved in] with

_____

[7] Officer Dooley stated that after the incident involving Appellant, he received additional training in the form of standardized field sobriety training, roadside impairment detection and enforcement training, and check-point training. N.T., 11/29/18, at 10-11.

individuals impaired by alcohol or drugs. Officer Shead responded,

> Well, I've been an officer for 22 years. More specifically, I've been in AID, which is Accident Investigation District for about 11 [years]. During those 11 years, I would [] say I have come in contact with a minimum of a thousand people who were impaired or intoxicated to varying degrees. Every time I've come into contact with someone, it's because they have been arrested for a DUI [in which] a chemical test has been performed. So I've seen people fall off of a chair, not stay awake, [emit a] heavy odor of alcohol, all the way down to just [emitting] a very light odor of alcohol, maybe lightly glassy eyes. And in the case of [Appellant], lightly slurred speech and slightly slow movements to varying degrees.

The [trial] court then asked, "So in your opinion as a police officer of 11 years and doing this with over a thousand people, did you believe [Appellant] was impaired?" Officer Shead responded that he thought [Appellant] was impaired.

After hearing [] from Officer Shead, the [trial] court heard from David Leff, a self-employed forensic narcotics consultant. The [trial] court asked Mr. Leff whether he heard the testimony from both officers. Mr. Leff, responded[,] "yes." The [trial] court then asked, "Do you have any reason to doubt Officer Dooley's statement when he indicated that in his opinion, he felt [Appellant] was impaired? Do you have any reason to challenge that information, that he believes [Appellant] was impaired?" Mr. Leff responded, "no." The [trial] court then asked, "And you heard Officer Shead's [testimony] that [] when [Appellant arrived at] the police station, he observed [Appellant] and he believed he was slightly impaired. Do you have any reason to believe that testimony to be false?" Mr. Leff responded, "I have no reason to believe that is false."

Trial Court Opinion, 12/18/19, at 2-5 (record citation, extraneous capitalization, ellipses, and original brackets omitted). Upon finding sufficient evidence to convict Appellant of DUI-controlled substance, the trial court stated,

- 10 -

[N]ot only did the arresting officer, Officer Dooley, observe [Appellant] being impaired but another officer, Officer Shead, also noticed the impairment of [Appellant]. Further, both of the officers[,] who[] were not together[,] observed almost the same type of behavior from [Appellant]. Additionally, [Appellant's] **own expert** stated that he had no reason to challenge [Appellant] being impaired [as established by] Officer Shead['s] and Officer Dooley's testimony or to think that the officers' testimony was false. Additionally, [Appellant's] **own counsel** admitted that [Appellant] was impaired at the time of the incident.[8] [Appellant's] counsel stated, "[T]he blood [test results were] suppressed at trial, so [the] testimony [] heard from the officer was just that [Appellant] was impaired [and] under the influence of [a] controlled substance. [The trial court] did not hear evidence at the time of trial as to what exact substance that was.[9] [Appellant] does have prescriptions for some but not all of those controlled substance[s]." . . . [T]hrough the testimony of the [o]fficers and [Appellant's] own counsel, and the fact that [Appellant's] counsel admitted that [Appellant] was, in fact, impaired, there was enough sufficient evidence to prove that [Appellant] was driving impaired while under the influence [of] a controlled substance.

---

[8] Appellant's counsel did not admit **at trial** that Appellant was impaired by a controlled substance at the time of the incident. Rather, the record demonstrates that **at the time of sentencing** and in response to the trial court's question pertaining to Appellant's "drug of choice in his case" and the Commonwealth's statement that Appellant used cannabis, alprazolam, oxycodone, and PCP, Appellant's counsel acknowledged that Appellant had "prescriptions for some but not all of those" controlled substances. N.T., 2/28/19, at 4-5. Counsel's statement at sentencing, however, did not constitute an admission of guilt for purposes of convicting Appellant of the aforementioned crime.

[9] Officer Dooley testified at trial that Appellant was impaired by the controlled substance PCP. Although no forensic testing was performed to confirm that the controlled substance, which impaired Appellant, was PCP, the trial court did find Officer Dooley's testimony credible, and therefore, did hear evidence as to the exact nature of the controlled substance, namely PCP.

*Id.* at 12-14 (record citations, original brackets, and extraneous capitalization omitted, emphasis in original).

Here, in viewing the evidence in the light most favorable to the Commonwealth, as verdict winner, Officer Dooley observed that Appellant's eyes were glassy, he had a glazed-over appearance with a "thousand-yard stare," his speech was slow and garbled, he repeated himself in conversation, and his clothing was disheveled, including, *inter alia*, that he was wearing his coat inside-out. N.T., 11/29/18, at 7-8. Officer Dooley smelled a strong odor emanating from Appellant's person, which Officer Dooley, upon receiving subsequent training, identified as PCP. *Id.* at 10-11; *see also Gause*, 164 A.3d at 538 (finding that evidence of an odor from a controlled substance is independent evidence of impairment that does not require expert testimony). Officer Dooley opined that Appellant's appearance and the odor of PCP established that Appellant was under the influence of a controlled substance such that he was unable to safely operate a vehicle, as demonstrated by his erratic, high-speed driving. N.T., 11/29/18, at 12; *see also Gause*, 164 A.3d at 539 (noting that "staggering, stumbling, glassy or bloodshot eyes, and slurred speech" are "ordinary signs of [impairment] discernable by a layperson"). When asked why he activated his police cruiser lights and siren in an attempt to stop Appellant, Officer Dooley stated that Appellant operated his vehicle at a high rate of speed, passed other vehicles on the roadway by using the wrong lane of travel, and drove in an erratic manner. N.T., 11/29/18, at 36.

Officer Dooley's observation of Appellant and his determination of Appellant's impairment were further supported by Officer Shead who observed Appellant having repetitive speech, lightly glassy eyes, and slightly slow movement. *Id.* at 38. Officer Shead opined that Appellant showed "slight signs of impairment". *Id.* at 40.

Based upon the totality of the circumstances, we find there was sufficient evidence to enable the trial court, as fact-finder, to find that Appellant was under the influence of a controlled substance (PCP) to a degree that impaired his ability to safely operate his vehicle beyond a reasonable doubt. Therefore, Appellant's first and second issues are without merit.

In his final issue, Appellant claims that the verdict was against the weight of the evidence. Our standard of review and scope of review of weight claims are as follows:

> Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge []had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is[, or is not,] against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the [trial] court's conviction that the verdict was[,] or was not[,] against the weight of the evidence and that a new trial should be granted in the interest of justice.

*Commonwealth v. Horne*, 89 A.3d 277, 285 (Pa. Super. 2014), *citing Commonwealth v. Widmer*, 744 A.2d 745 (Pa. 2000). "[A]n appellate court's role is not to consider the underlying question of whether the verdict

- 13 -

is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim." *Commonwealth v. Champney*, 832 A.2d 403, 444 (Pa. 2003) (citation omitted), *cert. denied*, 542 U.S. 939 (2004). The trial court abuses its discretion "where the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias[,] or ill-will." *Horne*, 89 A.3d at 285-286 (citation omitted). "The weight of the evidence is exclusively for the finder[-]of[-]fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses." *Commonwealth v. Small*, 741 A.2d 666, 672 (Pa. 1999) (citation omitted). In order for an appellant to prevail on a weight of the evidence claim, "the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the [trial] court." *Commonwealth v. Sullivan*, 820 A.2d 795, 806 (Pa. Super. 2003) (citation and internal quotation marks omitted), *appeal denied*, 833 A.2d 143 (Pa. 2003).

Here, Appellant argues,

The [trial] court's credibility determination regarding Officer Dooley's testimony was against the weight of the evidence given the dramatic inconsistencies in his averments. The officer's original observations recorded in his police paperwork included dilated pupils, slurred speech, and a strong odor of alcohol. Two years later, at trial, the officer testified to an entirely different set of observations: Appellant's pupils were pinpoint; his words were garbled; there was a strong odor [of] PCP rather than alcohol. The officer testified that his averments concerning Appellant's pupils [] changed because of his confusion about terminology, that the

- 14 -

inconsistency in his identification of the odor was attributable to having realized based on subsequent training that what he smelled was PCP, despite the fact that his subsequent training provided no opportunity to actually smell PCP, the odor of which somebody might have been described to him "at some point." He also testified that although he [] experienced the smell of PCP twice prior to the date of the incident and that he was already aware that PCP had a strong chemical odor, nothing in the paperwork even vaguely [referred] to such a smell or to an unknown odor. Moreover, he testified that his ten years of experience as a bartender made him acutely aware of the odor of alcohol in all its forms.

Appellant's Brief at 24-25.

In so arguing, Appellant challenges that trial court's credibility determination of Officer Dooley's testimony, arguing that due to the alleged inconsistency between the officer's testimony and his police report, regarding, *inter alia*, the condition of Appellant's pupils and the nature of the odor the officer smelled on Appellant's person, the verdict was against the weight of the evidence. At trial, the trial court credited Officer Dooley's testimony, stating,

[W]hatever Officer Dooley smelled, is what he smelled. [T]he [trial] court believes in his truthfulness in coming to the district attorney. The [trial] court believes his statement when he states[,] "I know what I smelled now," based upon whatever happened that helped him to come to a final conclusion in his mind as to what he smelled. The [trial] court has found cases where police officers have manipulated facts to get to an end. The [trial] court does not find that based upon this testimony.

N.T., 11/29/18, at 79 (extraneous capitalization and paragraph formatting omitted). In so stating, the trial court, as factfinder, cited its credibility

determination of Officer Dooley as a factor in reaching its decision to convict Appellant of the aforementioned crime.

Here, Appellant, in setting forth the same argument and challenges to the credibility of Officer Dooley's testimony as were presented at trial, asks this Court to step into the shoes of the trial court in order that we might reassess the credibility of the witnesses and reweigh the evidence in the hopes of reaching a different verdict. It is not for this Court to undertake such an exercise. **See Commonwealth v. Clay**, 64 A.3d 1049, 1056 (Pa. 2013) (stating, it is not appropriate for an appellate court to step "into the shoes of the trial [court] and revisited the underlying question of whether the verdict was against the weight of the evidence" (citation omitted)). This Court "will not substitute its judgment for that of the factfinder, which is free to assess the credibility of witnesses and to believe all, part, or none of the evidence presented." **Commonwealth v. Fortson**, 165 A.3d 10, 16 (Pa. Super. 2017) (citations omitted), *appeal denied*, 174 A.3d 558 (Pa. 2017).

Based upon our review of the record, we cannot conclude that the trial court abused its discretion in finding that Appellant's conviction was not contrary to the weight of the evidence. Therefore, Appellant's third issue is without merit.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/17/20